# EXHIBIT  A

<u>SOUTHERN PAN SERVICES COMPANY</u>
<u>EMPLOYEE STOCK OWNERSHIP PLAN</u>

**As Amended and Restated Effective January 1, 2006 Unless Otherwise
Indicated Herein**

## TABLE OF CONTENTS

PAGE

SECTION 1.................................................................................................1
BACKGROUND OF PLAN.........................................................................1
  *1.1*    *History and Purpose* ......................................................1
  *1.2*    *Effective Date; Plan Year* .............................................1
  *1.3*    *Trustee; Trust Agreement* ..............................................1
  *1.4*    *Plan Administration*.........................................................1
  *1.5*    *Employers* ........................................................................2
  *1.6*    *Plan Supplements*............................................................2

SECTION 2.................................................................................................2
ELIGIBILITY AND PARTICIPATION.........................................................3
  *2.1*    *Eligibility to Participate* ...............................................3
  *2.2*    *Participation Not Guarantee of Employment* ...............3
  *2.3*    *Leased Employees* ...........................................................4
  *2.4*    *Military Service*...............................................................4
  *2.5*    *Omission of Eligible Employee* ......................................4
  *2.6*    *Inclusion of Ineligible Employee* ..................................4

SECTION 3.................................................................................................6
SERVICE AND COMPENSATION...............................................................6
  *3.1*    *Years of Service* ..............................................................6
  *3.2*    *Hour of Service* ...............................................................6
  *3.3*    *One Year Break in Service* ............................................7
  *3.4*    *Compensation* ..................................................................8

SECTION 4...............................................................................................10
EMPLOYER CONTRIBUTIONS.................................................................10
  *4.1*    *Employer Contributions* ...............................................10
  *4.2*    *Due Date for Employer Contributions*.........................10
  *4.3*    *Payment of Acquisition Loans* ....................................12
  *4.4*    *Individual Employer's Share of Employer Contributions; Limitations on Employers' Contributions*..........................................................12

SECTION 5...............................................................................................13
COMPANY STOCK; ACQUISITION LOANS .............................................13
  *5.1*    *Company Stock*................................................................13
  *5.2*    *Acquisition Loans*...........................................................13

SECTION 6...............................................................................................16
INVESTMENT OF EMPLOYER CONTRIBUTIONS .................................16

*6.1     ESOP Stock Account Investments in Company Stock* ..................................*16*
*6.2     Diversification of Investments in Company Stock* .................................*16*

**SECTION 7** ...........................................................................................................**18**

ACCOUNTING ...........................................................................................................**18**
*7.1     Participants' Accounts* ........................................................................*18*
*7.2     Loan Suspense Account* .........................................................................*18*
*7.3     Accounting Dates; Special Accounting Dates; Accounting Period* ...........*18*
*7.4     Transfer of Shares From Loan Suspense Account to Participants' ESOP Stock Accounts* ..................................................................................................................*18*
*7.5     Adjustment of Participants' Accounts* ...................................................*19*
*7.6     Dividends on Company Stock* ................................................................*20*
*7.7     Investment of Cash in Trust* ................................................................*21*
*7.8     Fair Market Value of Company Stock* ....................................................*22*
*7.9     Stock Dividends, Stock Splits and Capital Reorganizations Affecting ESOP Shares* ..............................................................................................................*22*
*7.10    Prohibited Allocations* .........................................................................*22*

**SECTION 8** ...........................................................................................................**23**

CONTRIBUTION AND BENEFIT LIMITATIONS .......................................................**24**
*8.1     Contribution Limitations* ......................................................................*24*
*8.2     Combining of Plans* ..............................................................................*24*
*8.3     Highly Compensated Employee* ............................................................*27*
*8.4     Additional Definitions* ..........................................................................*28*

**SECTION 9** ...........................................................................................................**28**

PERIOD OF PARTICIPATION .................................................................................**31**
*9.1     Settlement Date* ...................................................................................*31*

**SECTION 10** .........................................................................................................*31*

VESTING IN BENEFITS; FORFEITURES; REINSTATEMENTS .................................**32**
*10.1    Fully Vested Benefits* ...........................................................................*32*
*10.2    Partially Vested Benefits* ......................................................................*32*
*10.3    Forfeitures* ............................................................................................*32*
*10.4    Reinstatement* ......................................................................................*33*

**SECTION 11** .........................................................................................................*33*

DISTRIBUTIONS FOLLOWING SETTLEMENT DATE ..............................................**35**
*11.1    Manner of Distribution* .........................................................................*35*
*11.2    Determination of Account Balances* .....................................................*35*
*11.3    Inactive Participant Account* ................................................................*35*
*11.4    Timing of Distributions* ........................................................................*36*
*11.5    Direct Rollovers* ...................................................................................*36*
*11.6    Immediate Distributions to Alternate Payees* .......................................*46*

11.7    Designation of Beneficiary ......................................................... 46
11.8    Missing Participants or Beneficiaries ....................................... 47
11.9    Facility of Payment .................................................................. 48

**SECTION 12** ................................................................................. **49**

RIGHTS, RESTRICTIONS, AND OPTIONS ON COMPANY STOCK ................. **49**
12.1    Right of First Refusal ............................................................. 49
12.2    Put Option ............................................................................... 49
12.3    Share Legend; Other Restrictions ........................................... 49
12.4    Nonterminable Rights .............................................................. 51

**SECTION 13** ................................................................................. **52**

VOTING AND TENDERING OF COMPANY STOCK ................................. 52

**SECTION 14** ................................................................................. **53**

GENERAL PROVISIONS ..................................................................... **53**
14.1    Interests Not Transferable ....................................................... 53
14.2    Absence of Guaranty ................................................................ 53
14.3    Employment Rights .................................................................. 53
14.4    Litigation by Participants or other Persons ............................ 53
14.5    Evidence ................................................................................... 53
14.6    Waiver of Notice ...................................................................... 54
14.7    Controlling Law ....................................................................... 54
14.8    Statutory References ................................................................ 54
14.9    Severability .............................................................................. 54
14.10   Additional Employers .............................................................. 54
14.11   Action By Employers ............................................................... 54
14.12   Gender and Number ................................................................ 55
14.13 Indemnification ......................................................................... 55
14.14 Automated Systems .................................................................. 55

**SECTION 15** ................................................................................. **56**

RESTRICTIONS AS TO REVERSION OF TRUST ASSETS TO THE EMPLOYERS ...... 56

**SECTION 16** ................................................................................. **57**

AMENDMENT AND TERMINATION ...................................................... **57**
16.1    Amendment ............................................................................... 57
16.2    Termination .............................................................................. 57
16.3    Nonforfeitability and Distribution on Termination .................. 57
16.4    Plan Merger, Consolidation, Etc. ........................................... 58

**SECTION 17** ................................................................................. **59**

ADMINISTRATION ............................................................................. **59**
17.1    The Administrator ..................................................................... 59
................................................................................................... 59

17.2   The Administrator's General Powers, Rights, and Duties ...........................59
17.3   Interested Administrator Member .......................................................... 60
17.4   Administrator Expenses ....................................................................... 60
17.5   Uniform Rules ..................................................................................... 60
17.6   Information Required by the Administrator ........................................... 60
17.7   Review of Benefit Determinations ........................................................ 60
17.8   Administrator's Decision Final ............................................................ 61
17.9   Claims Procedure ............................................................................... 61

**SECTION 18** ................................................................................................**66**

SPECIAL RULES APPLICABLE WHEN PLAN IS TOP-HEAVY ...................................66
18.1   Purpose and Effect .............................................................................. 66
18.2   Top-Heavy Plan .................................................................................. 66
18.3   Key Employee ..................................................................................... 66
18.4   Aggregated Plans ................................................................................ 67
18.5   Minimum Vesting ................................................................................ 67
18.6   Minimum Employer Contribution ......................................................... 68
18.7   Coordination of Benefits ..................................................................... 68
18.8   Special Rules For Certain Plan Arrangements ....................................... 69

## SOUTHERN PAN SERVICES COMPANY
## EMPLOYEE STOCK OWNERSHIP PLAN

# SECTION 1

### Background of Plan

**1.1** **History and Purpose**

Southern Pan Services Company, a Georgia corporation (the *"Company"*) hereby establishes the Southern Pan Services Company Employee Stock Ownership Plan (the *"Plan"*), to enable eligible employees to acquire stock ownership interests in the Company by investing primarily in Company Stock. The Plan is intended to be an employee stock ownership plan within the meaning of section 4975(e)(7) of the Internal Revenue Code of 1986, as amended (the *"Code"*) and is intended to enable eligible employees to acquire stock ownership interests in the Company, by investing primarily in Company Stock. The Plan is specifically permitted and designed to invest up to 100% of its assets in Company Stock.

**1.2** **Effective Date; Plan Year**

The original Effective Date of the Plan is January 1, 2000 (the *"Effective Date"*). The Effective Date of this Amended and Restated Plan is January 1, 2002 (unless otherwise indicated herein). The Plan will be administered on the basis of a plan year (the *"Plan Year"*) which shall be the calendar year.

**1.3** **Trustee; Trust Agreement**

Amounts contributed under the Plan are held and invested, until distributed, by the trustee (the *"Trustee"*) appointed by the Company acting by its Board of Directors. The Trustee acts in accordance with the terms of a trust agreement between the Company and the Trustee, which trust agreement is known as the Southern Pan Services Company Employee Stock Ownership Trust (the *"Trust"*). The Trust implements and forms a part of the Plan. The provisions of and benefits under the Plan are subject to the terms and provisions of the Trust. In the event of any conflict between the Plan and the trust agreement, the terms of the trust agreement shall control.

### 1.4    Plan Administration

The Plan is administered by a committee appointed by the Board of Directors of the Company (the "*Administrator*") as described in Section 17.1. Any notice or document required to be given to or filed with the Administrator will be properly given or filed if delivered or mailed, by registered or certified mail, postage prepaid, to the Administrator, in care of the Company at its corporate headquarters.

### 1.5    Employers

Any Controlled Group Member described in this section may adopt the Plan with the Company's consent. The Company and any such Controlled Group Members that adopt the Plan are referred to below collectively as the "*Employers*" and sometimes individually as an "*Employer*." A "*Controlled Group Member*" means any corporation that is a member of a controlled group of corporations with the Company (within the meaning of Section 409(l)(4) of the Code). A "*Related Company*" includes the Company and any corporation or other entity treated as being in a controlled group of corporations or under common control with the Company, within the meaning of Code Sections 414(b) and (c).

### 1.6    Plan Supplements

The provisions of the Plan may be modified by supplements to the Plan. The terms and provisions of each supplement are a part of the Plan and supersede the provisions of the Plan to the extent necessary to eliminate inconsistencies between the Plan and such supplement.

## SECTION 2

### Eligibility and Participation

**2.1    Eligibility to Participate**

(a)    Subject to the terms and conditions of the Plan, each employee will become a "*Participant*" in the Plan on the first day of the Plan Year in which the employee first completes a Year of Service with an Employer and has attained age 21, provided he is not:

(i)    a member of a group or class of employees of an Employer whose terms and conditions of employment are covered by a collective bargaining agreement, provided that retirement benefits were the subject of good faith bargaining between the Employer and a collective bargaining representative;

(ii)    solely for Plan years prior to January 1, 2003, a Leased Employee (For years thereafter the provisions relating to a Leased Employee shall be determined by the language contained in subsection 2.1(c) below.);

(iii)    an employee who is a nonresident alien.

(b)    For all purposes of the Plan, an individual shall be an "employee" of or be "employed" by a Related Company for any Plan Year only if such individual is treated as a common law employee by the Related Company for purposes of employment taxes and wage withholding for federal income taxes.  If an individual is not considered to be an "employee" of a Related Company in accordance with the preceding sentence for a Plan Year, a subsequent determination by the Related Company, any governmental agency or court that the individual is a common law employee of the Related Company, even if such determination is applicable to prior years, will not have a retroactive effect for purposes of eligibility to participate in the Plan.

(c)    For Plan Years commencing on and after January 1, 2002, for all purposes of the Plan, an individual shall be an "employee" of or be "employed" by a Related Company for any Plan Year only if such individual is a common law employee of a Related Company, or is a Leased Employee of a Related Company.

(d)    Effective prior to January 1, 2007, any Participant who terminates employment but is reemployed by an Employer before incurring a One Year Break in Service shall continue to participate in the Plan in the same manner as if such termination had not occurred, effective as of the date of reemployment.  Any Participant who terminates employment but is reemployed by an Employer after incurring a One Year Break in Service shall be treated as a new hire and participate in the Plan only after again satisfying the requirements of this Section.  Effective on or after January 1, 2007, any Participant who terminates employment but is reemployed as an employee by an Employer shall participate immediately on the date of his reemployment unless he has then experienced five (5) consecutive One Year Breaks in

3

Service. Any Participant who terminates employment but is reemployed by an Employer after incurring five (5) consecutive One Year Breaks in Service shall be treated as a new hire and participate in the Plan only after again satisfying the requirements of this Section.

**2.2     Participation Not Guarantee of Employment**

Participation in the Plan does not constitute a guarantee or contract of employment and will not give any employee the right to be retained in the employ of the Employers nor any right or claim to any benefit under the terms of the Plan unless such right or claim has specifically accrued under the terms of the Plan.

**2.3     Leased Employees**

A "*Leased Employee*" means any person defined in Code Section 414(n), which includes any person who is not an employee of an Employer, but who has provided services to an Employer, which services are performed under the primary direction or control of the Employer, on a substantially full-time basis for a period of at least one year, pursuant to an agreement between the Employer and a leasing organization. If a Leased Employee is subsequently employed by an Employer, the period during which a Leased Employee performs services for the Employer shall be taken into account for purposes of Section 3.1 of the Plan.

**2.4     Military Service**

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u).

**2.5     Omission of Eligible Employee**

If, in any Plan Year, any employee who should be included as a Participant in the Plan is erroneously omitted, and discovery of such omission is not made until after a contribution by the Employer for the Plan Year has been made, the Employer shall make a subsequent contribution with respect to the omitted employee in the amount which the Company would have contributed if he or she had not been omitted. Such contribution shall be made regardless of whether or not it is deductible in whole or in part in any taxable year under applicable provisions of the Code.

**2.6     Inclusion of Ineligible Employee**

If, in any Plan Year, any employee who should not have been included as a Participant in the Plan is erroneously included, and discovery of such incorrect inclusion

4

is not made until after a contribution by the Company for the year has been made, the Company shall not be entitled to recover the contribution made with respect to the ineligible employee regardless of whether a deduction is allowable with respect to such contribution.  In such event, the amount contributed with respect to the ineligible employee shall constitute a Forfeiture for the Plan Year in which the discovery is made.

# SECTION 3

## Service and Compensation

**3.1     Years of Service**

The term *"Years of Service"* means an employee's or Participant's period of service with the Employer determined in accordance with the following:

(a)     An Employee shall be credited with one "Year of Service" for eligibility purposes if he or she is employed with an Employer for a period of 12-consecutive months following the date he or she first completes an Hour of Service and completes 1,000 Hours of Service during that period.  If the Employee fails to do so, then he or she shall be credited with one "Year of Service" for eligibility purposes if he or she is employed by an Employer during the 12-consecutive months of a Plan Year and completes 1,000 Hours of Service during that period, beginning with the Plan Year including the first anniversary of the date on which the Employee first completes an Hour of Service for an Employer.

(b)     For purposes of vesting under Section 10, a Participant will be credited with a Year of Service upon completing 1,000 Hours of Service during a Plan Year.

(c)     Years of Service shall include service performed prior to the effective date of the Plan and shall include service regardless of age.

(d)     If any former Participant is reemployed after a One Year Break in Service has occurred, Years of Service shall include Years of Service prior to his One Year Break in Service, subject to the following rules:

(i)     If a former Participant has a One Year Break in Service, his pre-break and post-break service shall be used for computing Years of Service for eligibility and for vesting purposes only after he has been employed for one (1) Year of Service following the date of his reemployment with an Employer;

(ii)     Any former Participant who under the Plan does not have a nonforfeitable right to any interest in the Plan resulting from Employer Contributions shall lose credits otherwise allowable under (i) above if his consecutive One Year Breaks in Service equal or exceed the greater of (A) five (5) or (B) the aggregate number of his pre-break Years of Service;

(iii)     After five (5) consecutive One Year Breaks in Service, a former Participant's vested balance of his Accounts

attributable to pre-break service shall not be increased as a result of post-break service;

(iv)   If a former Participant who has not had his Years of Service before a One Year Break in Service disregarded pursuant to (ii) above completes one (1) Year of Service for eligibility purposes following his reemployment with an Employer, he shall participate in the Plan retroactively from his date of reemployment;

(v)   If a former Participant who has not had his Years of Service before a One Year Break in Service disregarded pursuant to (ii) above completes a Year of Service (a One Year Break in Service previously occurred, but employment had not terminated), he shall participate in the Plan retroactively from his date of reemployment.

## 3.2   Hour of Service

Subject to the following provisions of this Section, the term "*Hour of Service*" means, with respect to any Employee, (1) each hour for which the Employee is directly or indirectly paid or entitled to payment by an Employer for the performance of duties; (2) each hour for which the Employee is directly or indirectly paid or entitled to payment by an Employer for reasons other than the performance of duties (such as vacation, holiday, sickness, jury duty, disability, lay-off, military duty or leave of absence); and (3) each hour for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by an Employer.  These hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.  The same Hours of Service shall not be credit both under (1) or (2), as the case may be, and under (3).  All Hours of Service shall be determined and credited in accordance with DOL Reg. Sec. 2530.200b-2.

An employee or Participant shall not be credited with more than 501 Hours of Service for any single continuous period during which he performs no duties for an Employer.  Payments considered for purposes of the foregoing shall include payments unrelated to the length of the period during which no duties are performed but shall not include payments made solely as reimbursement for medically related expenses or solely for the purpose of complying with applicable workmen's compensation, unemployment compensation or disability insurance laws.

**3.3**     **One Year Break in Service**

The term *"One Year Break in Service"* means any Plan Year during which an employee or a Participant does not complete more than 500 Hours of Service.

To the extent necessary to avoid a One Year Break in Service and to the extent Hours of Service are not otherwise credited as provided in Section 3.2, an employee or Participant shall be credited with up to 501 Hours of Service during a Plan Year on account of an absence during such Plan Year due to:

(a)     the pregnancy of the employee or Participant;

(b)     the birth of a child of the employee or Participant;

(c)     the placement of a child with the employee or Participant in connection with the adoption of such child by such employee or Participant; and

(d)     caring for such child for a period beginning immediately following such birth or placement.

**3.4**     **Compensation**

Except as otherwise provided below, a Participant's *"Compensation"* for a Plan Year means the wages paid to a Participant within the meaning of section 3401(a) of the Code and all other payments of compensation to the Participant by an Employer for which the Employer is required to furnish the Participant a written statement, as described in Treas. Reg. § 1.415-2(d)(11)(i), but including for such Plan Year all of a Participant's salary reductions made pursuant to an arrangement maintained by an Employer under Section 125, 132(f)(4),  401(k) or 457 of the Code during the Plan Year.  For Plan Years beginning on or after January 1, 2003, Compensation paid to a Leased Employee shall include amounts determined as if the leasing company were an Employer.

For a Participant's initial year of participation, Compensation shall be recognized for the entire Plan Year.

In no event shall the amount of a Participant's Compensation taken into account for purposes of the Plan for any Plan Year exceed the dollar limitation in effect under Code Section 401(a)(17)(B) (as that limitation is adjusted from time to time by the Secretary of the Treasury pursuant to Code Section 401(a)(17) and which is $200,000 for the 2002 Plan Year).  If this period consists of fewer than 12 months, the annual compensation limit shall be an amount equal to the otherwise applicable annual compensation limit multiplied by a fraction, the numerator of which is the number of months in

8

the short determination period, and the denominator of which is 12.  The cost-of-living adjustment in effect for a calendar year applies to annual compensation for the determination period that begins with or within such calendar year.

For purposes of the definition of compensation, amounts under Code Section 125 include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage.  An amount will be treated as an amount under Code Section 125 only if the employer does not request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

# SECTION 4

## Employer Contributions

**4.1     Employer Contributions**

(a)     **Timing, Form and Amount.**  Subject to the conditions and limitations of the Plan, the Company, in its sole discretion, may direct the Employers to make a contribution (the "*Employer Contribution*") to the Plan for any Plan Year.  Any such Employer Contribution for a Plan Year shall be made in such amount, if any, as determined by the Company prior to the end of the Plan Year or within a reasonable period of time after the end of the Plan Year, provided, however, that the Company shall direct the Employer to make Employer Contributions at least in the amount which, when combined with Dividends which may lawfully be used to make payments on an Acquisition Loan, is sufficient to meet the Plan's obligations on all outstanding Acquisition Loans. Employer Contributions shall be made in cash or in Company Stock (in the discretion of the Company) as of the last day of the Plan Year.

(b)     **Allocation of Employer Contributions -- General Rule.**  An "*Eligible Participant*" for a Plan Year is a Participant who completes 1,000 Hours of Service during the Plan Year and who is actively employed by an Employer on the last day of the Plan Year, or who terminated employment with the Related Companies due to retirement, disability, or death as described in Section 9.1(a), (b), or (c) during the Plan Year.  Except as otherwise provided herein, Employer Contributions for a Plan Year shall be allocated to the ESOP Stock Account or ESOP Cash Account, as applicable, of each Eligible Participant in the proportion that such Eligible Participant's Compensation for the Plan Year bears to the total Compensation of all Eligible Participants for such Plan Year.

(c)     **Allocation of Employer Contributions -- Special Rules.**

(1)     If in any Plan Year, as a result of excluding from the allocation for such year Participants with less than 1,000 Hours of Service or who are not employed on the last day of the Plan Year as described in paragraph (b), the Plan would fail to qualify under section 401(a)(3) of the Code due to failure to comply with the "*Ratio Percentage Test*" described below, then for such Plan Year a number of Participants as determined in the following sentence shall be treated as Eligible Participants, to the extent necessary to satisfy such Ratio Percentage Test, and the allocation of Employer Contributions shall be recomputed accordingly.  The number of such Participants who

10

were not otherwise Eligible Participants who shall become Eligible Participants shall be the minimum number of Participants as are necessary to permit the Plan to satisfy the Ratio Percentage Test, and the specific Participants who shall become Eligible Participants under the terms of this paragraph shall be those Participants who were employed by an Employer on the last day of the Plan Year and who completed the greatest number of Hours of Service in the Plan Year.  If, after including all Participants described in the preceding sentence as Eligible Participants, the Plan still fails to satisfy the Ratio Percentage Test, then Participants who were not employed by an Employer on the last day of the Plan Year shall be included, in the order of those who completed the greatest number of Hours of Service during the Plan Year.  In the event more than one Employee has completed a specific number of Hours of Service, all such Employees shall be Eligible Participants if any one of them would be so eligible.  The Plan shall be deemed to comply with the Ratio Percentage Test if the percentage of non-Highly Compensated Employees benefiting under the Plan for a Plan Year is at least 70% of the percentage of Highly Compensated Employees benefiting under the Plan.  Employees who are nonresident aliens, who are under age 21, or who do not have a Year of Service for eligibility purposes, or who were not employed by an Employer on the last day of the Plan Year and who had less than 500 Hours of Service during the Plan Year shall be excluded from this computation.  For this purpose, an Employee shall be considered to benefit under the Plan for a Plan Year if he or she receives an allocation of Employer Contributions for that Plan Year.

(2)     If, for any Plan Year, it is necessary to rely on the special rules of Section 415(c)(6) of the Code to permit the Plan to comply with the limitations of Section 415 of the Code for that year, and more than one third of the Employer Contributions for such Plan Year would be allocated in accordance with this section to the accounts of Highly Compensated Employees, then the following procedure shall be utilized instead of the preceding paragraph: (1) exactly one third of the Employer Contributions shall be allocated to the accounts of the Highly Compensated Employees who are Eligible Participants, pro rata on the basis of such Eligible Participants' Compensation for such Plan Year; (2) the remaining Employer Contributions shall be allocated to the accounts of the non-Highly Compensated Employees who are Eligible Participants, pro rata on the basis of such Eligible Participants' Compensation for such Plan Year.

11

    **(d)**    **No Participant Contributions.**  No contributions, including rollover contributions, will be permitted by Employees or Participants.

**4.2**    **Due Date for Employer Contributions**

    Any Employer Contributions for a Plan Year shall be due on the last day of the Plan Year and, if not paid by the end of that Plan Year, shall be payable to the Trustee as soon as practicable thereafter, without interest, but not later than the time prescribed by law for filing the Company's Federal income tax return for such Plan Year, including extensions thereof.

**4.3**    **Payment of Acquisition Loans**

    For each Accounting Period during which an Acquisition Loan is outstanding, the Trustee shall use any Employer Contributions made for such Accounting Period pursuant to Section 4.1 to make principal and interest payments then due on the Acquisition Loan or loans outstanding at the end of such Accounting Period.  Each such payment by the Trustee will release shares of Company Stock from the Loan Suspense Account of the Trust.  Except as provided in Section 7.6, Company Stock that is so released will be allocated to Participants' ESOP Stock Accounts as provided in Section 4.1.  If no Acquisition Loan is outstanding at the end of an Accounting Period, the Trustee shall invest the contributions made for such Accounting Period as directed by the Administrator, in accordance with the provisions of Section 6.

**4.4**    **Individual Employer's Share of Employer Contributions; Limitations on Employers' Contributions**

    The Company shall determine each Employer's share of Employer Contributions to be made pursuant to Section 4.1.  The certificate of an independent certified public accountant selected by the Company as to the correctness of any amounts or calculations relating to the Employers' contributions under the Plan shall be conclusive on all persons.

# SECTION 5

## Company Stock; Acquisition Loans

### 5.1   Company Stock

For purposes of the Plan, the term "*Company Stock*" shall mean common stock issued by the Company that is readily tradable on an established securities market; provided, however, if the Company's common stock is not readily tradable on an established securities market, the term "*Company Stock*" shall mean common stock issued by the Company having a combination of voting power and Dividend rates equal to or in excess of:  (a) that class of common stock of the Company having the greatest voting power and (b) that class of common stock of the Company having the greatest Dividend rights.  Non-callable preferred stock shall be treated as Company Stock for purposes of the Plan if such stock is convertible at any time into stock that is readily tradable on an established securities market (or, if applicable, that meets the requirements of (a) and (b) next above) and if such conversion is at a conversion price that, as of the date of the acquisition by the Plan, is reasonable.  For purposes of the immediately preceding sentence, preferred stock shall be treated as non-callable if, after the call, there will be a reasonable opportunity for a conversion that meets the requirements of the immediately preceding sentence.  Company Stock shall be held under the Trust only if such stock satisfies the requirements of Section 407(d)(5) of ERISA.

### 5.2   Acquisition Loans

An "*Acquisition Loan*" means the issuance of notes, a series of notes or other installment obligations incurred by the Trustee, in accordance with the Trust, in connection with the purchase of Company Stock.  The term "*Financed Shares*" means shares of Company Stock acquired by the Trustee with the proceeds of an Acquisition Loan.  The terms of each Acquisition Loan shall meet the applicable requirements of Treasury Regulations Section 54.4975-7(b), including the requirements:  (a) that the loan bear a reasonable rate of interest, be for a definite period (rather than payable on demand), and be without recourse against the Plan, and (b) that the only assets of the Plan that may be given as collateral are Financed Shares purchased with the proceeds of that loan or with the proceeds of a prior Acquisition Loan. For purposes of this Section 5.2, the following provisions shall govern any Acquisition Loan consistent with the requirements of DOL Reg. Sec. 54.4975-7(b)(3)-(6) and b(13) and 54.4975-11(d)(4) and -11(f)(2):

(a)      Exempt loans must be primarily for the benefit of the Plan Participants and their beneficiaries;

(b)     At the time the loan is made the interest rate and price of the securities being acquired with loan proceeds should not be such that Plan assets might be drained off;

(c)     The terms of a loan must be at least as favorable to the Plan as the terms of a comparable loan resulting from arms-length negotiations between independent parties and the interest rate charged for the loan must not be in excess of a reasonable rate of interest;

(d)     The proceeds must be used within a reasonable time of their receipt by the ESOP to (i) acquire qualifying employer securities, (ii) repay such loan or (iii) repay an exempt loan;

(e)     An exempt loan must be for a specific term.  Such loan may not be payable at the demand of any person, except in the case of default.

(f)     No person entitled to payment under the exempt loan shall have any right to assets of the Plan other than (a) collateral given for the loan, (b) contributions (other than contributions of employer securities) that are made under the Plan to meet its obligations under the loan, and (c) earnings attributable to such collateral and the investment of such contributions.  The payments made with respect to an exempt loan by the ESOP during a Plan Year must not exceed an amount equal to the sum of such contributions and earnings received during or prior to the year less such payment in prior years. Such contributions and earnings must be accounted for separately in the books of account of the Plan until the loan is repaid.

(g)     In the event of a default on such exempt loan, the value of Plan asset transferred in satisfaction of the loan must not exceed the amount of default.  Further, if the lender is a disqualified person, a loan must provide for a transfer of Plan assets upon default only upon and to the extent of the failure to meet the payment schedule of the loan.  For this purpose, a person making a guarantee does not make such person a lender;

(h)     If securities acquired with the proceeds of an exempt loan available for distribution consists of more than one class, a distributee must receive substantially the same proportion of each class. However, benefits distributable from the portion of the Plan consisting of a stock bonus plan are distributable only in stock of the Company.

(i)     Where forfeitures occur, if interest in more than one class of qualifying employer securities have been allocated to the

14

Participant's Account relating thereto, the Participant must be treated as forfeiting the same proportion of each such class.

(j)     For purposes of the above, a "loan" refers to a loan made to the Plan by a disqualified person or a loan to the Plan which is guaranteed by a disqualified person.  An "exempt loan" refers to a loan that satisfies the provisions of DOL Reg. Sec. 54.4975-7(b).

(k)     For purposes of the above, a "disqualified person" is a person defined in Section 4975(e)(ii) of the Code.

15

# SECTION 6

## Investment of Employer Contributions

**6.1     ESOP Stock Account Investments in Company Stock**

Employer Contributions that are used to repay an Acquisition Loan shall be invested in Company Stock through the release of Financed Shares and the crediting of such shares to Participants' Accounts (as described in Sections 7.4, 7.5 and 7.6). If an Acquisition Loan is not outstanding, the Administrator may direct the Trustee to invest the Employer Contributions in Company Stock.

**6.2     Diversification of Investments in Company Stock**

Pursuant to rules established by the Administrator, Active Participants may elect to diversify portions of their ESOP Stock Accounts, subject to the following:

(a)     Each Active Participant who has attained age 55 years and has at least ten years of participation in the Plan (a "*Qualified Participant*") may elect during each of the Participant's Qualified Election Periods to diversify up to twenty-five percent (fifty percent in the case of the Participant's last Qualified Election Period) of the Qualified Participant's ESOP Stock Account balance eligible for diversification (as described in paragraph (b) next below), (i) by receiving a cash distribution of the applicable amount, (ii) by electing to transfer cash equal to the applicable amount to the Southern Pan Services, Inc. 401(k) Profit-Sharing Plan, or (iii) by electing to transfer cash equal to the applicable amount to an individual retirement account.

(b)     The portion of a Qualified Participant's ESOP Stock Account balance subject to diversification shall equal twenty-five percent (fifty percent in the case of the Qualified Participant's last year of the Qualified Election Period) of the total number of shares of Company Stock allocated to the Participant's ESOP Stock Account (including shares that the Participant previously elected to diversify pursuant to this Section), less the number of such shares previously diversified pursuant to the Qualified Participant's election under this Section.

(c)     For purposes of this Section, a "*Qualified Election Period*" means:  (i) the ninety-day period immediately following the last day of the first Plan Year in which the Participant becomes a Qualified Participant, and (ii) the ninety-day period immediately following the last day of each of the five Plan Years immediately following the first Plan Year in which the Participant becomes a Qualified Participant. Any election made in accordance with the provisions of paragraph (a) next above with respect to any Qualified Election Period shall be given effect as of the regular Accounting Date occurring ninety days after the end of that Qualified Election Period.

(d)     The provisions of this Section shall not apply to any Participant if the value of the Participant's ESOP Stock Account (determined as of the regular Accounting Date immediately preceding the first day on which the Participant would otherwise be entitled to make an election under this Section) is $500 or less.

# SECTION 7

## Accounting

**7.1    Participants' Accounts**

The Administrator shall maintain or cause to be maintained under the Plan the following accounts in the name of each Participant (to the extent applicable):

(a)    **ESOP Stock Account**.  An *"ESOP Stock Account"* to reflect shares of Company Stock allocated to such Participant.

(b)    **ESOP Cash Account**.  An *"ESOP Cash Account"* to reflect assets other than Company Stock allocated to such Participant.

In addition to the accounts described above, the Administrator may maintain such other accounts and subaccounts in the names of Participants or otherwise as the Administrator may consider necessary or advisable.  Collectively, all accounts and subaccounts maintained for a Participant are referred to as the Participant's *"Accounts."*

The Administrator may establish such nondiscriminatory rules and procedures relating to the maintenance, adjustment and liquidation of Participants' Accounts as the Administrator may consider necessary or advisable.

**7.2    Loan Suspense Account**

The Administrator shall maintain or cause to be maintained in the Trust a *"Loan Suspense Account"* to reflect the Financed Shares acquired by the Trustee with the proceeds of an Acquisition Loan, if any, prior to the transfer of such Financed Shares to the Participants' ESOP Stock Accounts, any cash Dividends attributable to such shares or transferred to the Loan Suspense Account pursuant to Section 7.5, and any Investment Income attributable to such Dividends.  At the end of each Plan Year, the Plan must consistently allocate to the Participants' Accounts non-monetary units representing Participants' interests in assets withdrawn from the Loan Suspense Account.

**7.3    Accounting Dates; Special Accounting Dates; Accounting Period**

The last day of each Plan Year shall be the *"Accounting Date."* Participants' Accounts shall be adjusted on the Accounting Date.  A *"Special Accounting Date"* is any date designated as such by the Administrator and a Special Accounting Date occurring under Section 16.3.  The term "Accounting Date" includes an annual Accounting Date and a Special Accounting Date.  Any references to an *"Accounting Period"* ending on an Accounting Date shall mean the period since the next preceding

18

regular Accounting Date. Notwithstanding the above, the Accounting Date or Special Accounting Date is the date of the transaction when the transaction involves the Plan and a disqualified person as it relates to any valuation of Company Stock.

**7.4     Transfer of Shares From Loan Suspense Account to Participants' ESOP Stock Accounts**

At the direction of the Administrator, the Trustee shall use the following to repay an Acquisition Loan:

(a)     Employer Contributions under Section 4.1 and any investment income attributable to such contributions; and

(b)     To the extent permitted by applicable law, cash Dividends paid on shares of Company Stock, as provided in Sections 7.5 and 7.6, and any investment income attributable to such Dividends.

The repayment of an Acquisition Loan shall cause a release of shares of Company Stock from the Loan Suspense Account to the Participants' ESOP Stock Accounts in accordance with Sections 7.5 and 7.6 as of each applicable Accounting Date. The number of shares to be released shall be determined by multiplying the number of shares in the Loan Suspense Account by a fraction, the numerator of which is the principal and interest payments during the applicable Accounting Period and the denominator of which is the sum of the numerator plus the total projected principal and interest payments during the remainder of the term of the Acquisition Loan.  If the requirements of Treasury Regulations Section 54.4975-7(b)(8)(ii) are satisfied, the phrase "principal and interest" in the preceding sentence shall be replaced by the word "principal."  In addition, only one method will be used per Acquisition Loan. Further, the special rule allowed for loan repayment will only be selected if:  (1) The Acquisition Loan provides for annual payments of principal and interest at a cumulative rate which is not less rapid at any time than level annual payments of such amounts for ten years; (2) The interest included in any payment is disregarded only to the extent that it would be determined to be interest under standard loan amortization tables; and (3) By reason of a renewal, extension or refinancing, the sum of the expired duration of the original loan, any renewal period, or any extension period and the duration of any new loan does not exceed 10 years. Also, in determining the then number of shares to be released for any Plan Year under either method: (1) The number of future shares under the Loan must be definitely ascertainable and must be determined without taking into account any possible extensions; (2) If the loan provides for a variable interest rate, the interest to be paid for all future Plan Years must be computed by using the interest rate applicable as of the end of the Plan Year for which the determination is being made; and (3) If the employer securities allocated to the Loan Suspense Account includes more than one class of shares, the number of shares of each class to be withdrawn for a Plan Year from the Loan Suspense Account must be determined by applying the applicable fraction provided for above to each such class.

19

Finally,   allocations of Company Stock shall be reflected separately for each class of such stock, and adequate records of the aggregate cost basis of Company Stock allocated to each Participant's Company Stock Account will be maintained.

**7.5     Adjustment of Participants' Accounts**

Participants' Accounts shall be adjusted as follows:

(a)     **Repayments of Acquisition Loans and Purchases of Company Stock**. For each Accounting Period, Financed Shares that are released from the Loan Suspense Account in accordance with Section 7.4 as a result of the use of Employer Contributions to make payments on an Acquisition Loan shall be credited to the Participants' ESOP Stock Accounts in accordance with the provisions of Section 4.1.  For each Accounting Period, Employer Contributions in cash shall be credited as of the applicable Accounting Date to the Participants' ESOP Cash Accounts as in accordance with the provisions of Section 4.1.  Upon the purchase of Company Stock with such cash, an appropriate number of shares of Company Stock shall be credited to the Participant's ESOP Stock Account, as appropriate, and the Participant's ESOP Cash Account shall be charged by the amount of the cash used to buy such Company Stock.  At all times cash in Participants' ESOP Cash Account may be used to purchase Company Stock from any source.

(b)     **Dividends**.  The term "*Dividend*" shall include both dividends as described in Code Section 316 and, effective on and after October 1, 2007, all distributions made with respect to the shares of stock of an S corporation.  Subject to the provisions of Section 7.6, cash Dividends on shares of Company Stock in the Loan Suspense Account shall be used to repay the outstanding Acquisition Loan incurred in connection with the acquisition of such shares, and the released shares shall be credited to the Participants' ESOP Stock Accounts, in accordance with the provisions of Section 7.6.  Subject to the provisions of Section 7.6, the Administrator shall credit to the Participants' ESOP Cash Accounts any cash Dividends paid to the Trustee on shares of Company Stock held in the Participants' ESOP Stock Accounts as of the record date. Such cash Dividends credited to the Participants' ESOP Cash Accounts may, to the extent permitted by law, be applied to the repayment of the Acquisition Loan incurred in connection with the acquisition of such shares, or, as determined in the discretion of the Administrator, be used to purchase shares of Company Stock, or be paid to the Participants as described in Section 7.6(c).  The Administrator shall credit an appropriate number of shares of Company Stock to the ESOP Stock Account of such Participant, and the Participant's ESOP Cash Account shall then be charged by the amount of cash used to repay an Acquisition Loan or used to purchase such Company Stock for the Participant's ESOP Stock Account.  Further, on and after October 1, 2007 (the date the Company elected to be taxed as an S corporation), Dividends on allocated shares may be used to finance the purchase of such shares (so long as Participants receive shares that equal the value of their S corporation Dividends that were used to service the Plan's debt).  Also, the Plan's Dividend deduction is not available to S corporations.

(c)     **Employer Contributions in Shares of Company Stock**. For any Accounting Period in which the Employer Contributions are made in the form of shares of Company Stock, such stock shall be credited to the Participants' ESOP Stock Account, as of the applicable Accounting Date, in accordance with the applicable provisions of Section 4.1.

(d)     **Appreciation, Depreciation, Etc**. As of each Accounting Date, before the allocation of any Employer Contributions under Section 4.1, any appreciation, depreciation, income, gains or losses in the fair market value of the Participants' ESOP Cash Accounts shall be allocated among and credited to the ESOP Cash Accounts of Participants, pro rata, according to the balance of each ESOP Cash Account as of the immediately preceding Accounting Date, reduced in each case by the amount of any charge to such ESOP Cash Account since the next preceding Accounting Date. Any gain or loss realized by the Trustee on the sale of Company Stock credited the Participants' ESOP Stock Accounts will be allocated to the Participants' ESOP Cash Accounts, pro rata, according to the balance of Participants' ESOP Stock Accounts, as of the next preceding Accounting Date.

**7.6     Dividends on Company Stock**

The following shall apply with respect to Dividends on Company Stock:

(a)     **Dividends Credited to ESOP Cash Accounts**. Any cash Dividends paid with respect to shares of Company Stock allocated to Participants' ESOP Stock Accounts or held in the Loan Suspense Account may, as determined by the Administrator, be allocated among and credited to Participants' ESOP Cash Accounts in accordance with Section 7.5(b).

(b)     **Dividends Used to Repay Acquisition Loan**. To the extent permitted by applicable law, any cash Dividends paid with respect to Financed Shares allocated to Participants' ESOP Stock Accounts, or held in the Loan Suspense Account may (as required by applicable Acquisition Loan documentation or, if not so required, as determined in the sole discretion of the Administrator) be used to make payments on an outstanding Acquisition Loan incurred in connection with the acquisition of such shares, or to purchase additional shares of Company Stock as provided in Section 7.5(b). Financed Shares released from the Loan Suspense Account by reason of Dividends paid with respect to such Company Stock shall be allocated to Participants' ESOP Accounts as follows:

(i)     First, Financed Shares with a fair market value (determined as of the valuation coincident with or immediately preceding the Dividend declaration date) at least equal to the Dividends paid with respect to the Company Stock allocated to Participants' ESOP Stock Accounts shall be allocated among

21

and credited to the ESOP Stock Accounts of such Participants, pro rata, according to the number of shares of Company Stock held in such accounts on the Dividend declaration date; and

(ii)     Next, any remaining Financed Shares released from the Loan Suspense Account shall be allocated among and credited in accordance with Section 4.1 to the Participants' ESOP Stock Accounts, as applicable.

(c)     **Dividends Paid to Participants**.  Any cash Dividends paid with respect to shares of Company Stock allocated to Participants' ESOP Stock Accounts may, as determined by the Administrator, be either (i) paid by the Company directly in cash to Participants on a non-discriminatory basis, (ii) paid to the Trustee and distributed by the Trustee to the Participants no later than ninety days after the end of the Plan Year in which paid to the Trustee, or (iii) at the election of a Participant, either paid as described in clauses (i) or (ii) hereof, or paid to the Trustee and reinvested in Company Stock. Notwithstanding anything to the contrary herein, with respect to any reinvested dividends held by the Trustee pursuant to the provisions of this Section 7.6 (c), such reinvested dividends shall be fully vested in the account of the applicable Participant.

**7.7     Investment of Cash in Trust**

At the direction of the Administrator, cash held in the Loan Suspense Account or Participants' ESOP Cash Accounts under the Trust will be invested by the Trustee, to the extent practicable, in short term securities or cash equivalents having ready marketability, mutual funds or in any other investment vehicle permitted under the terms of the Trust agreement.  Investment Income resulting from such investments shall be credited to the account to which it pertains.  The term "*Investment Income*" means income resulting from the temporary investment of Employer Contributions in cash, cash Dividends and any other amounts.

**7.8     Fair Market Value of Company Stock**

For purposes of the Plan and Trust, the fair market value of Company Stock shall be determined, as of the last day of each Plan Year, by an independent appraiser, as defined in Section 401(a)(28)(C) of the Code, in accordance with the terms of the Trust and the provisions of Section 3(18) of ERISA.

**7.9     Stock Dividends, Stock Splits and Capital Reorganizations Affecting ESOP Shares**

Shares of Company Stock received by the Trustee that are attributable to stock dividends, stock splits or to any reorganization or recapitalization of the Company

shall be credited to the Loan Suspense Account, if attributable to shares held in that account, or shall be credited to the released share account (including Participants' ESOP Stock Accounts) if attributable to shares held in the released share account, so that the interests of Participants immediately after any such stock dividend, split, reorganization or recapitalization are the same as such interests immediately before such event.

**7.10**    **Prohibited Allocations**

Notwithstanding any provision in this Plan to the contrary, if shares of Company Stock are sold to the Plan by a shareholder in a transaction for which special tax treatment is elected by such shareholder (or his representative) pursuant to section 1042 of the Code, no allocation of such shares may be made to the ESOP Stock Accounts of:

(a)    any person who owns (after the application of section 318(a) of the Code) more than 25 percent of any class of the outstanding securities of the Controlled Group Members; or

(b)    any person who sold shares to the Plan, and any person who is related to such shareholder (within the meaning of section 267(b) of the Code), but excluding lineal descendants of such shareholder as long as no more than 5 percent of the aggregate amount of all Company Stock sold by such shareholder or any other relative of the lineal descendant in a transaction to which section 1042 of the Code applies is allocated to lineal descendants of such shareholder during the Nonallocation Period.

Further, no other allocations of ESOP Contributions may be made to the Accounts of such persons unless additional allocations are made to other Participants, in accordance with the provisions of sections 401(a) and 410 of the Code.  The term "*Nonallocation Period*" means the period beginning on the date of sale and ending on the later of ten years after the date of sale or the date of the allocation attributable to the final payment on the Acquisition Loan incurred with respect to the sale.

23

# SECTION 8

## Contribution and Benefit Limitations

**8.1     Contribution Limitations**

For each Limitation Year, the Annual Addition to a Participant's Accounts shall not exceed the lesser of $44,000 (as adjusted from time to time by the Commissioner of Internal Revenue under Code Section 415(d)), or either (i) prior to January 1, 2002, twenty-five percent of the Participant's compensation (within the meaning of Code Section 415(c)(3)) or (ii) on or after January 1, 2002, one hundred percent thereof, as applicable, for that Limitation Year, with compensation defined for this purpose under Section 3.4 of the Plan.  The compensation limit referred to in this section shall not apply to any contribution for medical benefits after separation from service within the meaning of Code Sections 401(h) or 419A(f)(2) which is otherwise treated as an annual addition. Further, effective October 1, 2007, the Company became an "S Corporation" and to the extent permitted by law, on or after October 1, 2007, if more than 48% of the shares of Company Stock is owned (directly or indirectly for purposes of Section 409(p) of the Code) by disqualified persons (including a person who is reasonably expected to become a disqualified person) within the meaning of Section 409(p)(4), then no further allocations of Company Stock will be made to the Accounts of disqualified persons (including a person who is reasonably expected to become a disqualified person); provided, however, that such limitation on allocations must satisfy the nondiscrimination provisions of Section 401(a)(4) of the Code and the regulations issued thereunder.  Also, on or after October 1, 2007, during any period the Plan is holding Employer securities consisting of stock in an S corporation no portion of the assets of the Plan attributable to (or allocable in lieu of) such Employer securities may, during a Nonallocation Year (defined below in Section 8.4), accrue (or be allocated directly or indirectly under any plan of the Employer meeting the requirements of Section 401(a)) for the benefit of any disqualified person.

Pursuant to Treas. Reg. Sec. 1.409(p)-1(b)(v) a Nonallocation Year may be prevented by transferring assets from the accounts of disqualified persons to the non-ESOP portion of the Plan as provided below.

1. <u>Non-ESOP Portion</u>. Assets held under the Plan in accordance with this Section are held under a portion of the Plan that is not an employee stock ownership plan (ESOP), within the meaning of section 4975(e)(7) of the Internal Revenue Code.  Amounts held in the portion of the Plan that is not an ESOP (the Non-ESOP portion) shall be held in accounts that are separate from the accounts for the amounts held in the remainder of the Plan (the ESOP portion). The statements provided to Participants and Beneficiaries to show their interest in the Plan shall separately identify the amounts held in each such portion. Except as specifically set forth in this Section, all of the terms of the Plan apply to

24

any amount held under the Non-ESOP portion of the Plan in the same manner and to the same extent as to any other amount held under the Plan.

    2. <u>Transfers from ESOP to Non-ESOP Portion of Plan.</u> (a)  In the case of any event that the Plan Administrator determines would cause a Nonallocation Year (as defined in Section 8.4 of the Plan) to occur (referred herein as a "nonallocation event"), shares of employer stock held under the Plan before the date of the nonallocation event, shall be transferred from the ESOP portion of the Plan to the Non-ESOP portion of the Plan as provided in (2)(a). Actions that may cause a nonallocation event, include, but are not limited to, a contribution to the Plan in the form of shares of employer stock, a distribution from the Plan in the form of shares of employer stock, a change of investment within a Plan account of a disqualified person (as defined in Section 8.4 of the Plan) that alters the number of shares of employer stock held in the account of the disqualified person, or the issuance by the employer of synthetic equity as defined by section 409(p)(6)(C) of the Internal Revenue Code and section 1.409(p)-1(f) of the Treasury Regulations. A nonallocation event occurs only if (i) the total number of shares of employer stock that, held in the ESOP account of those Participants who are or who would be disqualified persons after taking into account the Participant's synthetic equity and the nonallocation event, exceeds (ii) 49.9% of the total number of shares of employer stock outstanding after taking the nonallocation event into account (causing a Nonallocation Year to occur as described in Section 8.4 of the Plan). No transfer under this section shall be greater than the excess, if any, of (i) over (ii). Before the nonallocation event occurs, the Plan Administrator shall determine the extent to which a transfer is required to be made and shall take steps to ensure that all action necessary to implement the transfer are taken before the nonallocation event occurs.

    (b)(1)  Except as provided for in (b)(2), at the date of the transfer, the total number of shares transferred, as provided for in (a)(1), shall be charged against the accounts of Participants who are disqualified persons (i) by first reducing the ESOP account of the Participant who is a disqualified person whose account has the largest number of shares (with the addition of synthetic equity shares) and (ii) thereafter by reducing the ESOP accounts of each succeeding Participant who is a disqualified person who has the largest number of shares in his or her their account (with the addition of synthetic equity shares. Immediately following the transfer, the number of transferred shares charged against any Participant's account in the ESOP portion of the Plan shall be credited to an account established for that Participant in the Non-ESOP portion of the Plan.

    (2) Notwithstanding (b)(1), the number of shares transferred shall be charged against the accounts of Participants who are disqualified persons (1) by first reducing the account of the Participant with the fewest shares (including synthetic equity) who is a disqualified person and who is a Highly Compensated Employee (as defined in Section 8.3 of the Plan) to cause the Participant not to be a disqualified person, and thereafter reducing the account of each  other Participant who is a disqualified person and a Highly Compensated Employee, in order of who has the fewest ESOP shares (including synthetic equity). A

transfer under this (b)(2) only applies to the extent that the transfer results in fewer shares being transferred than in a transfer under (b)(1).

(c) (1) If two or more Participants described in (b) have the same number of shares, the account of the Participant with the longest service shall be reduced first.

(2) Beneficiaries of the Plan are treated as Plan Participants for purposes of this section.

3. <u>Income Taxes</u>. If the Trust owes income taxes as a result of unrelated business taxable income under section 512(e) of the Internal Revenue Code with respect to shares of employer stock held in the Non-ESOP portion of the Plan, the income tax payments made by the Trustee shall be charged against the accounts of each Participant or Beneficiary who has an account in the Non-ESOP portion of the Plan in proportion to the ratio of the shares of employer stock in such Participant's or Beneficiary's account in the non-ESOP portion of the Plan to the total shares of employer stock in the non-ESOP portion of the Plan. The Employer shall purchase shares of employer stock from the Trustee with cash (based on the fair market value of the shares so purchased) from each such account to the extent necessary for the Trustee to make the income tax payments.

**(a)     Definitions**

The term "*Limitation Year*" means the Plan Year.

The term "*Annual Addition*" for any Limitation Year means the total amount of Employer Contributions, voluntary employee contributions and forfeitures allocated to the Accounts of a Participant under this Plan and any Related Defined Contribution Plan for a Plan Year, except that, for Plan Years ending prior to October 1, 2007  (the year in which the Company elected to be taxed as an S corporation), if no more than one-third of the Employer Contributions which are deductible under Code Section 404(a)(9) are allocated to the Accounts of Highly Compensated Employees during the Plan Year, then any Employer Contributions which are applied by the Trustee to pay interest on an Acquisition Loan, and any Financed Shares which are allocated as Forfeitures, shall not be included in computing Annual Additions.  In addition, Annual Additions include (i) amounts allocated to an individual medical account, as defined in section 415(c) of the Code, which is part of a pension or annuity plan maintained by the employer, (ii) amounts derived from contributions paid or accrued which are attributable to post-retirement medical benefits, allocated to the separate account of a key employee (as defined in Code Section 419A(d)(3), under a welfare benefit fund, as defined  in Code Section 419(e) maintained by the employer and (iii) allocations under a simplified employee pension, as defined in section 408(k) of the Code.  In the event that Employer

26

Contributions are applied to the repayment of an Acquisition Loan and shares of Company Stock are released from the Loan Suspense Account and allocated to the Participants' ESOP Stock Accounts, each Participant's Annual Addition for a Limitation Year based on the allocated shares of Company Stock shall be calculated as the lesser of:  (i) the amount of such Employer Contributions credited to the Participant's Accounts, as adjusted by the preceding sentence, or (ii) the fair market value of shares of Company Stock credited to the Participant's Accounts resulting from the application of such Employer Contributions to the repayment of the Acquisition Loan.

The term "*Related Defined Contribution Plan*" means any defined contribution plan (as defined in section 414(i) of the Code) maintained by the Company or a Related Company.

(b) **Corrections.**  If it is anticipated that a Participant's Annual Addition will exceed the limitations of this Section due to reasonable estimation of Participant's compensation, the Administrator shall reduce such Participant's Annual Addition to the extent necessary to meet the above limitations.  If any Employer Contributions cannot be allocated to any Participant's Accounts by reason of this limitation, the Administrator shall, first, in a Related Defined Contribution Plan, return salary reduction contributions made by the Participant and reduce other employer contributions made for the Participant.  If after the return of all salary reduction contributions and the reduction of employer contributions in a Related Defined Contribution Plan, any Employer Contributions hereunder still cannot be allocated to a Participant's Accounts, the Administrator shall credit such Employer Contributions to a "suspense account" pursuant to the authority and regulations of Treasury Regulation Section 1.415-6(b)(6), to the extent permitted thereby and subject to the option provided for in Treasury Regulation Section 1.415-6(b)(6)(iii).

## 8.2    Combining of Plans

In applying the limitations set forth in Section 8.1, reference to this Plan shall mean this Plan and all other defined contribution plans (whether or not terminated) ever maintained by the Related Companies.  It is intended that in complying with the requirements of Section 8.2, a Participant's benefits under this Plan shall be limited after the Participant's benefits under any other defined contribution plan maintained by the Employers are limited.

### 8.3   Highly Compensated Employee

With respect to any Plan Year, A "*Highly Compensated Employee*" means an eligible employee who is a highly compensated employee as defined in Section 414(q) of the Code, which includes any employee who:

(a)   was at any time a 5 percent owner (as defined in Section 416(i) of the Code) of any Employer or any Related Company during the Plan Year or the preceding Plan Year, or;

(b)   for the preceding Plan Year:

(i)   received compensation from an Employer or any Related Company in excess of $80,000 (which amount may be adjusted annually by the Secretary of Treasury), and

(ii)   if the Administrator elects, was in the top-paid group of employees for such preceding year.

A former employee will be considered a Highly Compensated Employee if such former employee was a Highly Compensated Employee either when he separated from service with the Employers, or at any time after he attained age 55. The determination of whether an employee is a Highly Compensated Employee will be made with reference to the definitions provided in Section 414(q) of the Code and any regulations issued by the Secretary of the Treasury thereunder (including any cost-of-living adjustments to the dollar figure above). For purposes of this Section, an employee's compensation for a Plan Year shall be compensation defined under Section 3.4 of the Plan.

### 8.4   Additional Definitions

For purposes of this Section 8, the following additional definitions shall apply:

(a)   "Disqualified Person" is any individual who owns: (1) at least 10% of the number of "deemed-owned shares" in the corporation, or (2) at least 20% of the number of "deemed-owned shares" taking into account shares owned by family members. For this purpose, any "synthetic equity" held by the individual is treated as "deemed-owned shares" if to do so would result in his being a "Disqualified Person."

(b)   "Deemed-owned shares" means the shares allocated to an individual's Plan account plus his share of the unallocated shares in the Plan suspense account. For this purpose, the suspense account shares are treated as allocated in proportion to the most recent share allocation under the Plan.

(c)     "Synthetic equity" includes equity-type interests such as options, warrants, restricted stock and stock appreciation rights.  Also includes nonqualified deferred compensation and rights to acquire interests in certain related entities.

(d)     "Nonallocation Year" is any year in which a Plan owns stock in an S corporation and Disqualified Persons own at least 50% of the outstanding stock of the corporation.  In applying the 50% ownership test, one must consider an individual's deemed-owned shares, the shares he owns directly in the corporation and the shares he owns under attribution rules (that include shares owned by certain family members and related entities).  For this purpose, any "synthetic equity" held by an individual shall be treated as "deemed-owned shares" if to do so would result in a "Nonallocation Year."

(e)     For these purposes, rules of section 318(a) of tile IRC shall apply for purposes of determining ownership, except that in applying Section 318(a)(1) of the IRC, the members of an individual's family shall include members of the family described in paragraph (f) below, and Section 318(a)(4) of the IRC regarding options shall not apply. In addition, notwithstanding the employee trust exception in Section 318(A)(2)(B)(i) of the IRC, an individual shall be treated as owning Deemed-Owned Shares of the individual.  Solely for purposes of applying paragraph (g) below, this paragraph (e) shall be applied after the attribution rules of paragraph (g) have been applied.

(f)     Member of the family shall mean with respect to any individual: (i) the spouse of the individual, (ii) An ancestor or lineal descendant of the individual or the individual's spouse, (iii) A brother or sister of the individual or the individual's spouse and any lineal descendant of the brother or sister, and (iv) the spouse of any individual described in paragraph (f)(ii) or (iii) above.  A spouse of an individual who is legally separated from such individual under a decree of divorce or separate maintenance shall not be treated as such individual's spouse for purposes of this paragraph (f).

(g)     For purposes of paragraphs (a) and (d) above, in the case of a person who owns Synthetic Equity in the S Corporation, except to the extent provided in Regulations, the shares of stock in the corporation in which such Synthetic Equity is based shall be treated as outstanding stock in such corporation and Deemed-Owned Shares of such person if such treatment of Synthetic Equity of one or more such persons results in: (i) the treatment of any person as a Disqualified Person, or (ii) the treatment of any Plan Year as a Non-allocation Year.  For purposes of this paragraph (g), Synthetic Equity shall be treated as owned by a person in the same manner as Stock is treated as owned by a person under Sections 318(a)(2) and 318(a)(3) of the IRC.  If, without regard to this paragraph (g) a person is treated as a Disqualified Person or a Plan Year is treated as a Non-allocation Year, this paragraph (g) shall not be construed to result in the person or Plan Year not being so treated.

(h)     "S Corporation" shall mean a corporation as defined at Section 1361(a) of the IRC for which an election under Section 1362(a) of the IRC is in effect.

(i)     "Impermissible allocation" is any contribution or other annual addition (e.g. forfeiture allocation) in the ESOP or other qualified plan (including a release and allocation from an ESOP suspense account) that would have otherwise been added to the Disqualified Person's account and invested in employer securities consisting of S corporation stock.  Treas. Reg. 1.409(p) – 1T(b)(2)(iii).

(j)     "Impermissible accrual" includes all S corporation shares that are employer securities and other ESOP assets attributable to such shares (including IRC section 1368 distributions, sale proceeds and earnings on either the distribution or the proceeds) held for a Disqualified Person's account, whether attributable to current or prior year contributions.  Treas. Reg. 1.409(p) – 1T(b)(2)(ii).

# SECTION 9

## Period of Participation

**9.1    Settlement Date**

A Participant's "*Settlement Date*" will be the date on which his employment with the Related Companies is terminated because of the first to occur of the following events:

(a)    **Normal Retirement**.  The Participant retires or is retired from the employ of the Employers and the Related Companies on or after the date on which he attains age 65 and has at least 5 Years of Service for vesting purposes ("*Normal Retirement Age*").  A Participant's right to the balances in his Accounts shall be nonforfeitable on or after the date he attains Normal Retirement Age.

(b)    **Disability Retirement**.  The Participant retired on account of total and permanent disability when the Administrator determines a physical or mental condition of a Participant resulting from bodily injury, disease or mental disorder which renders the Participant incapable of continuing any gainful occupation.  This determination will be made in a nondiscriminatory manner to all Participants.  A Participant's right to the balances in his Accounts shall be nonforfeitable on or after the date he retires due to disability.

(c)    **Death**.  The Participant's death.

(d)    **Resignation or Dismissal**.  The Participant resigns or is dismissed from the employ of the Employers and the related companies before retirement in accordance with paragraph (a) or (b) next above.

If a Participant is transferred from employment with an Employer to employment with a Related Company that is not an Employer, then for purposes of determining when the Participant's Settlement Date occurs under this Section, the Participant's employment with such Related Company (or any Related Company to which the Participant is subsequently transferred) shall be considered as employment with the Employers.

31

## SECTION 10

### Vesting in Benefits; Forfeitures; Reinstatements

**10.1    Fully Vested Benefits**

If a Participant's employment with an Employer or a Related Company is terminated because the Participant retires, becomes disabled, or dies, under Sections 9.1(a), (b) or (c), respectively, the balances in all of his Accounts as at the Accounting Date coincident with or next preceding his Settlement Date (after all adjustments required under the Plan as of that date have been made) shall be nonforfeitable and shall be distributable to him, or in the event of his death to his Beneficiary, under Section 11.1.

**10.2    Partially Vested Benefits**

If a Participant resigns or is dismissed from the employ of an Employer or a Related Company under Section 9(d), the balances in his ESOP Cash Account and ESOP Stock Account as of the Accounting Date coincident with or next following his Settlement Date (after all adjustments required under the Plan as of that date have been made) will each be reduced to a vested percentage thereof computed in accordance with the following schedule:

**For Participants resigning or dismissed prior to January 1, 2007:**

| If the Participant's Number of Years of Service Is: | The Vested Percentage of His Account Will Be: |
|---|---|
| Less than 3 years | 0% |
| 3 years but less than 4 years | 20% |
| 4 years but less than 5 years | 40% |
| 5 years but less than 6 years | 60% |
| 6 years but less than 7 years | 80% |
| 7 years or more | 100% |

**For Participant's resigning or dismissed on or after January 1, 2007:**

| Years of Service | Vested Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |

32

|         |      |
|---------|------|
| 4       | 60%  |
| 5       | 80%  |
| 6 or more | 100% |

Notwithstanding the above, with respect to any loan outstanding on September 26, 2005 incurred for the purpose of acquiring qualifying employer securities, the faster vesting rules will not apply to any Plan Year beginning before the earlier of (i) the date on which the loan is fully repaid or (ii) the date on which the loan was scheduled to be fully repaid as of September 26, 2005.

The resulting balances in his ESOP Cash Account and ESOP Stock Account will be distributable to the Participant in the time and manner provided in Section 11.4.

**10.3   Forfeitures**

The portion of a Participant's Accounts that are not distributable to him on his Settlement Date by reason of the provisions of Section 10.2 shall be a "Forfeiture" on the date the Participant receives a distribution of the entire vested portion of the Participant's Accounts (or the last day of the Plan Year in which the Participant has incurred five consecutive One Year Breaks in Service, if earlier).  For this purpose, effective January 1, 2004, and effective through December 31, 2006, a Participant who terminates during this period and has no vested interest in the Plan shall be deemed to have a complete distribution of his vested accounts on the last day of the Plan Year in which his employment terminates.  Effective January 1, 2007, and thereafter, a Participant with no vested interest in the Plan shall be deemed to have received a distribution of the entire vested portion of the Participant's Accounts (or the last day of the Plan Year in which the Participant has incurred five consecutive One Year Breaks in Service, if earlier).  The amount deemed as Forfeitures will be reallocated to the Accounts of remaining Participants in accordance with the provisions of Section 4.1 as of the last day of the Plan Year in which the forfeiture occurs.  Assets in the Participant's Accounts other than Financed Shares will be forfeited before Financed Shares are forfeited.

**10.4   Reinstatement**

If a former Participant returns to employment with an Employer or Related Company prior to incurring five consecutive One Year Breaks in Service but had not received or been deemed to have received a distribution of his vested Accounts, the entire unvested portion of his Accounts shall be restored to his Accounts.  Such restoration shall be made out of Forfeitures occurring in the Plan Year of reemployment (prior to allocations under Section 4.1).  To the extent such Forfeitures are not sufficient, the Employer shall make a special contribution to the Participant's restored Accounts.  If a former Participant returns to employment with an Employer or Related Company prior to incurring five consecutive One Year Breaks in Service and receives a distribution of his

vested Accounts the Employee's employer-derived Account balance will be restored to the amount on the date of distribution if the Employee repays to the Plan the full amount of the distribution attributable to Employer Contributions before the earlier of five years after the first date on which the Participant is subsequently reemployed by the Employer, or the date the Participant incurs five consecutive One Year Breaks in Service following the date of distribution.  If a former Participant returns to employment with an Employer or Related Company prior to incurring five consecutive One Year Breaks in Service and has been deemed to have received a distribution of his vested Accounts, the employer-derived Account balance of the Employee will be restored to the amount on the date of such deemed distribution, if the Employee resumes employment covered under the Plan before the date such Participant incurs five consecutive One Year Breaks in Service.

If a former Participant who is not 100% vested receives a distribution of his Accounts prior to the occurrence of five consecutive One Year Break in Service and he is reemployed prior to the occurrence of such a five consecutive One Year Break in Service, the portion of his Accounts which was not vested (including any restored Accounts) shall be maintained separately until he becomes 100% vested.  His vested and nonforfeitable percentage in such separate Accounts upon his subsequent termination of Service shall be equal to:

$$\frac{X-Y}{100\%-Y}$$

For purposes of applying this formula, X is the vested percentage at the time of the subsequent termination, and Y is the vested percentage at the time of the prior termination.

# SECTION 11

## Distributions Following Settlement Date

### 11.1    Manner of Distribution

Distribution will be made in the form of whole shares of Company Stock, with cash equal to the value of any fractional shares.  However, if the Company's charter or bylaws restrict ownership of substantially all of the outstanding Company Stock to employees and the Trust, the Participant's Accounts will be distributed in cash, or if the Administrator elects, shares of Company Stock, subject to a requirement that they be sold to the Company immediately upon distribution.  Effective October 1, 2007, the Company has elected to be taxed as an "S corporation."  Therefore, on and after October 1, 2007, the Participant's Accounts will be distributed in cash, or if the Administrator elects, shares of Company Stock, subject to a requirement that they be sold to the Company immediately upon distribution.  Further, on or after October 1, 2007, the Administrator may deny distribution in the form of Company Stock to any person who elects direct rollover of such a distribution as described in Section 11.5.

Subject to the conditions set forth below (including the provisions and conditions of Section 11.4), distribution of the balances in a Participant's Accounts will be made to, or for the benefit of, the Participant or, in the case of the Participant's death, to or for the benefit of the Participant's Beneficiary, as directed by the Administrator, in the form of substantially equal annual installments over a period not to exceed five years.  However, each such installment shall be in an amount at least equal to the lesser of $1,000 or the remaining balance in the Participant's Accounts, even if this results in a complete distribution in a period less than five years.

Notwithstanding the foregoing, the period over which distribution of a Participant's ESOP Stock Account may be made may be increased by one year, up to five additional years, for each $175,000 ($185,000 effective January 1, 2007) (or fraction thereof) by which the total balance of the Participant's Accounts exceeds $885,000 ($915,000 effective January 1, 2007).  The aforementioned dollar amounts shall be subject to cost-of-living adjustments prescribed by the Secretary of the Treasury.

### 11.2    Determination of Account Balances

After a Participant's Settlement Date has occurred and pending complete distribution of the Participant's Account balances, the Participant's Accounts will be held under the Plan and will be subject to adjustment under Section 7.

**11.3    Inactive Participant Account**

In any year that a Participant who has terminated employment with the Employers ("*Inactive Participant*"), has shares of Company Stock in his ESOP Stock Account, the Administrator shall identify such account as an Inactive Participant account.

**11.4    Timing of Distributions**

Distribution of the balance of a Participant's Accounts shall be made as follows:

(a)    **Distribution of Accounts**.  Subject to the Participant consent requirements of paragraph (c) below, distribution of a Participant's Accounts balances shall commence as follows:

(i)    For periods prior to January 1, 2007, the following provisions apply:

(A)    **Distribution Upon Retirement or Death**.  If a Participant retires, becomes disabled, or dies (as described in Sections 9.1(a), (b) or (c)) while in the employ of an Employer or a Related Company or effective January 1, 2004 has Accounts that would be valued at less than $5,000 ($1,000 effective March 28, 2005) on his Settlement Date (a "Small Account"), distribution of the Participant's Accounts will commence on or about the 180th day following the end of the Plan Year in which the Participant's Settlement Date occurs unless the Participant elects a later date.

(B)    **Distribution Upon Resignation or Dismissal**.  If a Participant's Settlement Date occurs under Section 9.1(d) distribution of the Participant's Accounts will commence on or about the 180th day following the close of the Plan Year which is the fifth Plan Year following the Plan Year in which the Participant's Settlement Date has occurred, unless the Participant is reemployed by an Employer or a Related Company before such year.  However, solely for purposes of this paragraph (ii), a Participant's Accounts shall not be deemed to include Financed Shares until the close of the Plan Year in which Acquisition Loan relating to such Financed Shares has been repaid in full.

(ii)    For periods on or after January 1, 2007, the following provisions apply:

36

(A)     Distribution Upon Retirement, Disability or Death.  If a Participant retires, becomes disabled, or dies (as described in Sections 9.1(a), (b) or (c)) while in the employ of an Employer or a Related Company, distribution of the Participant's Accounts will commence no later than the 180th day following the end of the Plan Year in which the Participant's Settlement Date occurs (or as soon as administratively feasible following the completion of the annual valuation, if later).

(B)     Distribution of Small Accounts.  If a Participant has vested Accounts that would be valued at less than $1,000 on his Settlement Date ("Small Account"), distribution of the Participant's Accounts will commence no later than the 180th day following the end of the Plan Year in which the Participant's Settlement Date occurs (or as soon as administratively feasible following the completion of the annual valuation, if later).

(C)     Distribution Upon Resignation or Dismissal.  If a Participant's Settlement Date occurs due to a resignation or dismissal under Section 9.1(d) and is not a Small Account (defined in paragraph (a)(ii) above), distribution of the Participant's vested Accounts will commence no later than the 180th day following the close of the Plan Year which is the fifth Plan Year following the Plan Year in which the Participant's Settlement Date occurs (or as soon as administratively feasible following the completion of the annual valuation, if later), unless the Participant is reemployed by an Employer or a Related Company before such year.  However, solely for purposes of this paragraph (iii), a Participant's vested Accounts shall not be deemed to include Financed Shares until the close of the Plan Year in which Acquisition Loan relating to such Financed Shares has been repaid in full.

Notwithstanding the above relating to the commencement of a distribution, the Participant's vested Accounts distribution may be accelerated and the following alternative modes of distribution may be selected by the Administrator (after considering the available liquid assets of the Company and the Trust) pursuant to a nondiscriminatory policy:

(1)     Distribution of a Participant's vested Accounts in a single lump sum; or

(2)     Distribution of a Participant's vested Accounts in substantially equal, annual installments over a period not exceeding

37

five years (provided that the period over which installments may be distributed may be extended an additional year (up to an additional five years) for each $180,000 or fraction thereof by which his vested Accounts exceeds $915,000 (as adjusted after 2007 for increases in the cost of living pursuant to Section 409(o)(2) of the Code)); or

(3)    Any combination of the foregoing.

The Administrator shall establish a nondiscriminatory written distribution policy which satisfies the requirements of this Section 11.4(a) and such policy may be modified by the Administrator from time to time in a nondiscriminatory manner.

(b)    **Distributions to Beneficiary Upon Death**. Notwithstanding the provisions of paragraph (a) above, distributions upon the death of a Participant shall be made in accordance with the requirements of paragraph (d) below.

(c)    **Participant Consent**. Notwithstanding any other provision of this section, if a Participant's vested Account balances total $5,000 ($1,000 effective March 28, 2005) or more at any time at or after his Settlement Date, no portion of his Vested Accounts may be distributed to him before he attains the later of Normal Retirement Age or age 62 without his written consent. Failure to provide such consent within 30 days following solicitation of such consent by the Administrator shall defer the Participant's right to receive a distribution until the later of his attainment of Normal Retirement Age or age 62 (or his death, if earlier).

(d)    **Required Commencement Date**. Notwithstanding any contrary provision of the Plan, distribution of the Account balance of a Participant shall commence by April 1 of the calendar year next following the later of: (i) the calendar year on which the Participant attains age 70½ or (ii) the calendar year in which the Participant's Settlement Date occurs *("Required Commencement Date")*; provided, however, that the Required Commencement Date of a Participant who is a five-percent owner (as defined in Code Section 416) of an Employer or Related Company in the calendar year in which the Participant attains age 70½ shall be April 1 of the calendar year next following the calendar year which the Participant attains age 70½. Distribution under the preceding sentence shall be made in annual installments in the minimum amounts required by regulations issued under Code Section 401(a)(9). If a Participant dies before the Participant's Required Commencement Date, the Participant's benefits must be distributed over a period not exceeding the greater of: (A) five years from the death of the Participant; (B) in the case of payments to a Beneficiary other than the Participant's Spouse, the life expectancy of such Beneficiary,

38

provided payments begin within one year of the Participant's death (or such later date as may be prescribed under Treasury Regulations); or (C) in the case of payments to the Participant's Spouse, the life expectancy of such Spouse, provided payments begin by the date the Participant would have attained age 70½. If a Participant dies after the Participant's Required Commencement Date, the remaining portion of the Participant's benefits will be distributed at least as rapidly as under the method of distribution in effect at the Participant's death.  A Participant who is not a 5 percent owner and who attains age 70½ while still employed by an Employer or a Related Company may elect to receive a distribution commencing April 1 of the calendar year next following the calendar year in which he attains age 70½, in installments as described in regulations issued under Code Section 401(a)(9).  Unless a Participant elects in an authorized fashion otherwise, distribution shall also commence not later than the 60th day following the close of the Plan Year in which the latest of the following occurs:  (1) the Participant attains age 65 or Normal Retirement Age, if earlier; (2) the tenth anniversary of the date on which the Participant commenced participation under this Plan; or (3) the Participant terminates employment with all Employers.  Notwithstanding any provision of the Plan to the contrary, with respect to distributions under the Plan made for calendar years beginning on or after January 1, 2003, the Plan will apply the minimum distribution requirements of Code Section 401(a)(9), including Section 1.401(a)(9)-2 through 1.401(a)(9)-9 (as modified by the Section 401(a)(9) Final and Temporary Regulations published in the Federal Register on April 17, 2002 and effective January 1, 2003), the provisions of sub-paragraph (e) below shall apply.

(e)     **Time and Manner of Distribution.**   Subject to the provisions of sub-paragraph (d) above, the following provisions shall apply to the Plan:

(i)     **Required Commencement Date.** The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Commencement Date.

(ii)     **Death of Participant Before Distributions Begin.** If the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

(a) If the Participant's surviving spouse is the Participant's sole designated beneficiary, then distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70½, if later.

(b) If the Participant's surviving spouse is not the Participant's sole designated beneficiary, then distributions to the designated beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

(c) If there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(d) If the Participant's surviving spouse is the Participant's sole designated beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, this paragraph (e), other than paragraph (e) (ii) (a), will apply as if the surviving spouse were the Participant.

For purposes of this paragraph (e) and paragraph (g), unless paragraph (e) (ii) (d) applies, distributions are considered to begin on the Participant's Required Commencement Date. If paragraph (e) (ii) (d) applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under paragraph (e) (ii) (a).

(iii)  **Forms of Distribution.** Unless the Participant's interest is distributed in a single sum on or before the Required Commencement Date, as of the first distribution calendar year distributions will be made in accordance with paragraphs (f) and (g) of this article.

(f)  **Required Minimum Distributions During Participant's Lifetime.**

(i)  **Amount of Required Minimum Distribution For Each Distribution Calendar Year.** During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

(a) the quotient obtained by dividing the Participant's account balance by the distribution period in the Uniform Lifetime Table set forth in section 1.401(a)(9)–9 of the Treasury regulations, using the Participant's age as of the Participant's birthday in the distribution calendar year; or

(b) if the Participant's sole designated beneficiary for the distribution calendar year is the Participant's spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table set forth in section 1.401(a)(9)–9 of the Treasury regulations, using the Participant's

and spouse's attained ages as of the Participant's and spouse's birthdays in the distribution calendar year.

(ii)   **Lifetime Required Minimum Distributions Continue Through Year of Participant's Death.** Required minimum distributions will be determined under this paragraph (f) beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the Participant's date of death.

(g)   **Required Minimum Distributions After Participant's Death.**
   (i)   **Death On or After Date Distributions Begin.**
      (a) **Participant Survived by Designated Beneficiary.** If the Participant dies on or after the date distributions begin and there is a designated beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's designated beneficiary, determined as follows:
         (1) The Participant's remaining life expectancy is calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.
         (2) If the Participant's surviving spouse is the Participant's sole designated beneficiary, the remaining life expectancy of the surviving spouse is calculated for each distribution calendar year after the year of the Participant's death using the surviving spouse's age as of the spouse's birthday in that year. For distribution calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.
         (3) If the Participant's surviving spouse is not the Participant's sole designated beneficiary, the designated beneficiary's remaining life expectancy is calculated using the age of the beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.
      (b) **No Designated Beneficiary.** If the Participant dies on or after the date distributions begin and there is no designated beneficiary as of September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the

41

Participant's remaining life expectancy calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

(ii) **Death Before Date Distributions Begin.**
(a) **Participant Survived by Designated Beneficiary.** If the Participant dies before the date distributions begin and there is a designated beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the remaining life expectancy of the Participant's designated beneficiary, determined as provided in paragraph (g) (i).
(b) **No Designated Beneficiary.** If the Participant dies before the date distributions begin and there is no designated beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.
(c) **Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin.** If the Participant dies before the date distributions begin, the Participant's surviving spouse is the Participant's sole designated beneficiary, and the surviving spouse dies before distributions are required to begin to the surviving spouse under paragraph (e) (ii) (a), this paragraph (g) (ii) will apply as if the surviving spouse were the Participant.

(h) **Definitions.**

(i) **Designated beneficiary.** The individual who is designated as the beneficiary under section of the Plan and is the designated beneficiary under section 401(a)(9) of the Internal Revenue Code and section 1.401(a)(9)-4 of the Treasury regulations.

(ii) **Distribution calendar year.** A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's Required Commencement Date. For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under paragraph (e) (ii). The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's Required Commencement Date. The

42

required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's Required Commencement Date occurs, will be made on or before December 31 of that distribution calendar year.

(iii)   **Life expectancy.** Life expectancy as computed by use of the Single Life Table in section 1.401(a)(9)–9 of the Treasury regulations.

(iv)   **Participant's account balance.** The account balance as of the last valuation date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the account balance as of dates in the valuation calendar year after the valuation date and decreased by distributions made in the valuation calendar year after the valuation date. The account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

(v)   **Required Commencement Date.** The date specified in Section 11.4 (d) of the Plan.

**11.5   Direct Rollovers**

Certain individuals who are to receive distributions under the Plan may elect that such distributions be paid in the form of a direct rollover (as described in Section 401(a)(31) of the Code and the regulations thereunder) to the Trustee or custodian of a plan eligible to accept direct rollovers, subject to the following:

(a)   **Eligible Rollover Distribution.** A distribution may be paid in a direct rollover under this Section only if the distribution constitutes an Eligible Rollover Distribution. An "*Eligible Rollover Distribution*" means distribution under the Plan to an Eligible Distributee other than: (i) a distribution that is one of a series of substantially equal payments made annually or more frequently either over the life (or life expectancy) of the Participant or the joint lives (or life expectancies) of the Participant and his Beneficiary or over a specified period of ten years or more, (ii) a distribution required under Section 11.4(d) to meet the minimum distribution requirements of Section 401(a)(9) of the Code, or (iii) a distribution excluded from the definition of an Eligible Rollover Distribution under applicable Treasury Regulations. Notwithstanding the

43

immediately preceding sentence, an Eligible Rollover Distribution includes only those amounts that would be includible in the gross income of the Eligible Distributee if such amounts were not rolled over to another plan as provided under Section 402(c) of the Code. For purposes of the direct rollover provisions of the Plan, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code Section 408(a) or to a qualified defined contribution plan described in Code Section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible. Finally, for purposes of the direct rollover provisions of the Plan, any amount that is distributed on account of hardship shall not be an eligible rollover distribution and the distributee may not elect to have any portion of such a distribution paid directly to an eligible retirement plan.

(b)     **Eligible Distributee**.  An "*Eligible Distributee*" is:  (i) a Participant, (ii) a Participant's surviving Spouse who is entitled to receive payment of the Participant's Account balances after the Participant's death, or (iii) the Spouse or former spouse of a Participant who is an alternate payee under a qualified domestic relations order (as defined in Section 414(p) of the Code).

(c)     **Eligible Retirement Plan**.  A direct rollover of an Eligible Rollover Distribution may be made to no more than one Eligible Retirement Plan.  Except as otherwise provided below, an "*Eligible Retirement Plan*" is:  (i) an individual retirement account described in Section 408(a) of the Code, (ii) an individual retirement annuity described in Section 408(b) of the Code (other than an endowment contract), (iii) an annuity plan described in Section 403(a) of the Code, or (iv) a plan qualified under Section 401(a) of the Code that by its terms permits the acceptance of rollover contributions.  With respect to the surviving Spouse of a deceased Participant who is entitled to receive a distribution of the Participant's Accounts, an "*Eligible Retirement Plan*" shall mean only an individual retirement account described in Section 408(a) of the Code or an individual retirement annuity described in Section 408(b) of the Code (other than an endowment contract).  For purposes of the direct rollover provisions of the Plan, an eligible retirement plan shall also mean an annuity contract described in Code Section 403(b) and an eligible plan under Code

44

Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p).

(d)     **Minimum Amounts.**  An Eligible Distributee may elect a direct rollover of all or a portion of an Eligible Rollover Distribution only if the total amount of the Eligible Rollover Distributions expected to be received by the Eligible Distributee during the Plan Year is $200 or more (or such lesser amount as the Administrator may establish).  An Eligible Distributee may elect payment of a portion of an Eligible Rollover Distribution as a direct rollover and may receive directly the remainder of such distribution, provided that the amount paid by direct rollover is at least $500 (or such lesser amount as the Administrator may establish).

(e)     **Elections.**  An Eligible Distributee's election of a direct rollover pursuant to this Section must be in writing on a form designated by the Administrator and must be filed with the Administrator at such time and in such manner as the Administrator shall determine.  The Administrator shall establish such rules and procedures as it deems necessary to provide for distributions by means of direct rollover.

(f)     **Special Rules for S corporations.**  Notwithstanding anything to the contrary above, where a Participant directs that an S corporation stock be distributed to an IRA in a direct rollover, such S corporation election shall not be affected as a result of the Plan's distribution of S corporation stock, since such distribution shall not be made unless:

(i)     The S corporation actually repurchases the S corporation stock contemporaneously with, and effective on the same day as, the distribution, or, pursuant to the terms of the Plan, the Plan is permitted to assume the rights and obligations of the S corporation to repurchase the S corporation stock immediately upon the Plan's distribution of the stock to an IRA and the Plan actually repurchases the S corporation stock contemporaneously with, and effective on the same day as, the distribution; and

(ii)     No income (including tax-exempt income), loss, deduction, or credit attributable to the distributed S corporation stock under Section 1366 is allocated to the Participant's IRA.

45

**11.6     Immediate Distributions to Alternate Payees**

       The Administrator shall direct distribution of the amount of a Participant's Account balances assigned to an alternate payee under a qualified domestic relations order (as defined in Section 414(p) of the Code) on the earliest date specified in such qualified domestic relations order, without regard to whether such payments commence prior to the Participant's earliest retirement age (as defined in Section 414(p)(4)(B) of the Code).

**11.7     Designation of Beneficiary**

       Each Participant may designate any person or persons (who may be designated concurrently, contingently or successively) to whom the Participant's benefits are to be paid if the Participant dies before the Participant receives all of Participant's benefits.  A beneficiary designation must be made on a form furnished by the Administrator for this purpose, and the Participant must sign such form.  A beneficiary designation form will be effective only when the form is filed with the Administrator while the Participant is alive and will cancel all the Participant's beneficiary designation forms previously filed with the Administrator.

       Notwithstanding the foregoing provisions of this Section and any beneficiary designation filed with the Administrator in accordance with this Section, if a Participant dies and has a surviving Spouse at the Participant's date of death, the Account balances described in the preceding sentence shall be payable in full to the Participant's surviving Spouse in accordance with this Section 11 (treating such surviving Spouse as the Participant's Beneficiary), unless prior to the Participant's death the following requirements were met:

       (a)     The Participant elected that the Participant's benefits under the Plan be paid to a person other than the Participant's surviving Spouse;

       (b)     The Participant's Spouse consented in writing to such election;

       (c)     The Spouse's consent acknowledged the effect of such election and was witnessed by a notary public; and

       (d)     Such election designates a beneficiary that may not be changed without further spousal consent, unless the Spouse executed a general written consent expressly permitting changes of the beneficiary without any requirement of further consent of the Spouse.

       For purposes of the Plan, and subject to the provisions of any qualified domestic relations order (as defined in Section 414(p) of the Code), a Participant's "*Spouse*" means the person to whom the Participant is legally married at the earlier of the date

of the Participant's death or the date payment of the Participant's benefits commenced and who is living at the date of the Participant's death.

If a deceased Participant failed to designate a Beneficiary as provided above, or if the Beneficiary dies before the Participant or before complete payment of the Participant's benefits, the Participant's benefits shall be distributed to the Participant's Spouse, or if there is none, the Administrator, in its discretion, may direct the Trustee to pay the Participant's benefits as follows:

    (e)    To or for the benefit of any one or more of the Participant's relatives by blood, adoption or marriage and in such proportions as the Administrator determines; or

    (f)    To the legal representative or representatives of the estate of the last to die of the Participant and the Participant's Beneficiary.

The term "*Beneficiary*" as used in the Plan means the natural or legal person or persons designated by a Participant as the Participant's beneficiary under the last effective beneficiary designation form filed with the Administrator under this Section and to whom the Participant's benefits would be payable under this Section.

## 11.8    Missing Participants or Beneficiaries

Each Participant and each Beneficiary must file with the Administrator from time to time in writing his post office address and each change of post office address. If a Participant dies before the Participant receives all of the Participant's vested Account balances, the Participant's Beneficiary must file any change in his post office address with the Administrator. Any communication, statement or notice addressed to a Participant or Beneficiary at the last post office address filed with the Administrator, or if no address is filed with the Administrator then, in the case of a Participant, at the Participant's last post office address as shown on the Employers' records, will be binding on the Participant and the Participant's Beneficiary for all purposes of the Plan. The Employers, the Trustee, and the Administrator shall not be required to search for or locate a Participant or Beneficiary. If the Administrator notifies a Participant or Beneficiary that the Participant or Beneficiary is entitled to a payment and also notifies the Participant or Beneficiary of the provisions of this Section, and the Participant or Beneficiary fails to claim his benefits or make his whereabouts known to the Administrator by the end of the third Plan Year following such notification, the benefits of the Participant or Beneficiary shall be deemed a Forfeiture, and allocated  to the Eligible Participants for such Plan Year in accordance with Section 4.1. If, after such a Forfeiture has occurred, such Participant or Beneficiary later claims his benefits, the amount so forfeited (but not any subsequent earnings thereon) shall be reinstated to the Participant's Account from the Employer Contributions and Forfeitures for the Plan Year in which such claim is made.

**11.9     Facility of Payment**

When a person entitled to benefits under the Plan is under legal disability, or, in the Administrator's opinion, is in any way incapacitated so as to be unable to manage the person's financial affairs, the Administrator may direct the Trustee to pay the benefits to such person's legal representative.  Any payment made in accordance with the preceding sentence shall be a full and complete discharge of any liability for such payment under the Plan.

# SECTION 12

## Rights, Restrictions, and Options on Company Stock

**12.1    Right of First Refusal**

Subject to the provisions of the last sentence of this Section, shares of Company Stock distributed to Participants shall be subject to a "*Right of First Refusal*." The Right of First Refusal shall provide that, prior to any subsequent transfer, the Participant (or the Participant's Beneficiary) must first make a written offer of such Company Stock to the Trust and to the Company at the then fair market value of such Company Stock, as determined by an "independent appraiser" (as defined in Section 401(a)(28) of the Code).  The Trust shall have the first priority to exercise the right to purchase the Company Stock, and then the Company shall have second priority to exercise the right.   A bona fide written offer from an independent prospective buyer shall be deemed to be the fair market value of such Company Stock for this purpose, unless the value per share, as determined by the independent appraiser as of the Accounting Date at the end of the immediately preceding Plan Year, is greater.  The Company and the Trust shall have a total of 14 days (from the date the offer is first received by the Company or the Trust) to exercise the Right of First Refusal on the same terms offered by the pro-spective buyer.  A Participant (or the Participant's Beneficiary) entitled to a distribution of Company Stock may be required to execute an appropriate stock transfer agreement (evidencing the Right of First Refusal) prior to receiving a certificate for Company Stock. No Right of First Refusal shall be exercisable by reason of any of the following transfers:

(a)    The transfer upon disposition of any such shares by any legal representative, heir or legatee, but the shares shall remain subject to the Right of First Refusal;

(b)    The transfer by a Participant or a Participant's Beneficiary in accordance with the Put Option pursuant to Section 12.2; or

(c)    The transfer while Company Stock is listed on a national securities exchange registered under Section 6 of the Securities Exchange Act of 1934 or quoted on a system sponsored by a national securities association registered under Section 15A(b) of the Securities Exchange Act of 1934.

**12.2    Put Option**

The Company shall issue a "*Put Option*" to each Participant (or each Participant's Beneficiary) who receives a distribution of Company Stock if, at the time of such distribution, Company Stock is not then readily tradable on an established market, as defined in Section 409(h) of the Code and the regulations thereunder.  The Put Option shall permit the Participant (or the Participant's Beneficiary) to sell such Company Stock

49

at its then fair market value, as determined by an independent appraiser in accordance with the provisions of Section 7.8, to the Company at any time during the sixty-day period commencing on the date the Company Stock was distributed to the Participant (or the Participant's Beneficiary), and, if not exercised within that period, the Put Option will temporarily lapse. The Administrator, in its sole discretion, may extend the sixty-day period referred to in the immediately preceding sentence if such an extension is necessary in order for the Company Stock to be valued by an independent appraiser as of the applicable Accounting Date coincident with or immediately preceding the date the Company Stock was distributed to the recipient. As of the annual Accounting Date coincident with or immediately preceding the Plan Year in which such temporary lapse of the Put Option occurs, the independent appraiser shall determine the value of the Company Stock in accordance with the provisions of Section 7.8, and the Administrator shall notify each distributee who did not exercise the initial Put Option prior to its temporary lapse in the preceding Plan Year of the revised value of the Company Stock. The time during which the Put Option may be exercised shall recommence on the date such notice or revaluation is given and shall permanently terminate sixty days thereafter. The Trustee may be permitted by the Company to purchase Company Stock put to the Company under a Put Option. Payment for Company Stock sold pursuant to a Put Option shall be made, as determined in the discretion of the Administrator, in the following forms:

(a)     If a Participant's ESOP Stock Account is distributed in a total distribution (that is, a distribution within one taxable year of the balance to the credit of the Participant's ESOP Stock Account), then payment for such Company Stock may be made with a promissory note that provides for substantially equal annual installments commencing within thirty days from the date of the exercise of the Put Option and over a period not exceeding five years, with interest payable at a reasonable rate (as determined by the Administrator) on any unpaid installment balance, with adequate security provided, and without penalty for any prepayment of such installments; or

(b)     In a lump sum no later than thirty days after such Participant exercises the Put Option.

If the Company's charter or by-laws restrict ownership of substantially all of the outstanding Company Stock to employees and the Trust ^^^ then shares of Company Stock distributed to or for the benefit of a Participant (or his Beneficiary) must be immediately sold to the Company in accordance with this Section and the Participant will not be entitled to the two 60-day put periods. Effective October 1, 2007, the Company has elected to be taxed as an "S corporation" under Code Section 1361 and, therefore, the shares of Company Stock distributed to or for the benefit of a Participant (or his Beneficiary) must be immediately sold to the Company in accordance with this Section and the Participant will not be entitled to the two 60-day put periods.

50

### 12.3    Share Legend; Other Restrictions

Shares of Company Stock held or distributed by the Trustee may include such legend restrictions on transferability as the Company may reasonably require in order to assure compliance with applicable Federal and state securities laws and the provisions of this Section 12.

Except as otherwise provided in this Section, no shares of Company Stock held or distributed by the Trustee may be subject to a put, call or other option, or buy-sell or similar arrangement. Further, the Plan may not otherwise obligate itself to acquire securities from a particular security holder at an indefinite time determined upon the happening of an event such as the death of a holder.

### 12.4    Nonterminable Rights

The provisions of this Section 12 are nonterminable, and shall continue to be applicable to shares of Company Stock even if (i) the Plan ceases to be an employee stock ownership plan within the meaning of Section 4975(e)(7) of the Code or (ii) the loan is repaid, to the extent required by DOL Reg. Sec. 54.4975-11(a)(3)(ii) of the Code.

# SECTION 13

## Voting and Tendering of Company Stock

The voting of Company Stock held in the Trust, and if a tender offer is made for Company Stock, the tendering of such shares, shall be subject to the provisions of ERISA and the following provisions, to the extent such provisions are not inconsistent with ERISA:

(a)     **Allocated Shares**.  For purposes of this Section, shares of Company Stock shall be deemed to be allocated and credited to a Participant's ESOP Stock Account in an amount to be determined based on the balance in such account on the Accounting Date coincident with or next preceding the record date of any vote or tender offer.

(b)     **Voting of Company Stock**.  With respect to any corporate matter which involves the voting of Company Stock with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all of the assets of a trade or business, or such other transactions which may be prescribed by regulation, (and, if the Company has a registration-type class of securities, all other shareholder voting issues) each Participant may be entitled to direct the Trustee as to the exercise of any shareholder voting rights attributable to shares of Company Stock then allocated to his Accounts, but only to the extent required by Sections 401(a)(22) and 409(e)(3) of the Code and the regulations thereunder. For purposes of the foregoing sentence, each Participant shall be a Named Fiduciary of the Plan as described in Section 402(a)(2) of ERISA.  The Administrator shall have the sole responsibility for determining when a corporate matter has arisen that involves the voting of Company Stock under this provision.  If a Participant is entitled to so direct the Trustee, all allocated Company Stock as to which such instructions have been received (which may include an instruction to abstain) shall be voted by the Trustee in accordance with such instructions, provided that the Trustee may vote the shares as it determines is necessary to fulfill his fiduciary duties under ERISA.  The Trustee shall vote in his discretion any shares of Company Stock held in the Loan Suspense Account, and any allocated shares of Company Stock as to which no voting instructions have been received, subject to his fiduciary duties under ERISA.

(c)     **Tendering of Company Stock**.  In the event of a tender offer or other offer to purchase shares of Company Stock held by the Trust, the Trustee shall tender or sell the shares in its sole discretion, subject to the fiduciary duties under ERISA.

In carrying out its responsibilities under this Section, the Trustee may rely on information furnished to it by the Administrator, including the names and current addresses of Participants, the number of shares of Company Stock allocated to their Accounts, and the number of shares of Company Stock held by the Trustee that have not yet been allocated.

52

## SECTION 14

### General Provisions

**14.1    Interests Not Transferable**

The interests of Participants and their beneficiaries under the Plan are not in any way subject to their debts or other obligations and, except as may be required by the tax withholding provisions of the Code or any state's income tax act, may not be voluntarily or involuntarily sold, transferred, alienated or assigned.  Notwithstanding the foregoing, the Plan shall comply with any domestic relations order that, in accordance with procedures established by the Administrator, is determined to be a qualified domestic relations order (as defined in Section 414(p)(1)(A) of the Code), and shall comply with any judgment or settlement to the extent required by Code section 401(a)(13).

**14.2    Absence of Guaranty**

The Administrator, the Employers, and the Trustee do not in any way guarantee the Trust from loss or depreciation.  The liability of the Administrator or the Trustee to make any payment under the Plan will be limited to the assets held by the Trustee that are available for that purpose.

**14.3    Employment Rights**

The Plan does not constitute a contract of employment, and participation in the Plan will not give any employee the right to be retained in the employ of an Employer, nor any right or claim to any benefit under the Plan, unless such right or claim has specifically accrued under the terms of the Plan.

**14.4    Litigation by Participants or other Persons**

To the extent permitted by law, if a legal action against the Trustee, an Employer, or the Administrator by or on behalf of any person results adversely to that person, or if a legal action arises because of conflicting claims to a Participant's or Beneficiary's benefits, the cost to the Trustee, an Employer, or the Administrator of defending the action will be charged to the extent possible to the sums, if any, that were involved in the action or were payable to the Participant or Beneficiary concerned.

**14.5   Evidence**

Evidence required of anyone under the Plan may be by certificate, affidavit, document or other information that the person acting on it considers pertinent and reliable, and signed, made or presented by the proper party or parties.

**14.6   Waiver of Notice**

Any notice required under the Plan may be waived by the person entitled to such notice.

**14.7   Controlling Law**

To the extent not superseded by the laws of the United States, the laws of Georgia shall be controlling in all matters relating to the Plan.

**14.8   Statutory References**

Any reference in the Plan to the Code means the Internal Revenue Code of 1986, as amended.  Any reference in the Plan to ERISA means the Employee Retirement Income Security Act of 1974, as amended.  Any reference in the Plan to a section of the Code or ("*ERISA*"), or to a section of any other Federal law, shall include any comparable section or sections of any future legislation that amends, supplements or supersedes that section.

**14.9   Severability**

In case any provisions of the Plan shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining provisions of the Plan, and the Plan shall be construed and enforced as if such illegal and invalid provisions had never been set forth in the Plan.

**14.10   Additional Employers**

With the consent of the Company, any Controlled Group Member may, by filing with the Company a written instrument to that effect, become an Employer hereunder by adopting the Plan and becoming a party to the Trust agreement.

**14.11   Action By Employers**

Any action authorized or required to be taken by the Company or an Employer under the Plan shall be by resolution of its board of directors, by resolution of a duly authorized committee of its board of directors, or by a person or persons authorized by resolution of its board of directors or such committee.

**14.12   Gender and Number**

Where the context admits, words in the masculine gender include the feminine and neuter genders, the plural includes the singular, and the singular includes the plural.

**14.13 Indemnification**

To the extent permitted by law, any member or former member of the Administrator, any person who was, is or becomes an officer or director of the Company, an Employer, or a Related Company or any employee of an Employer to whom the Administrator or any Employer has delegated any portion of its responsibilities under the Plan, and all employees and agents thereof, shall be indemnified and saved harmless by the Employers (to the extent not indemnified or saved harmless under any liability insurance contract or other indemnification arrangement with respect to the Plan) from and against any and all liability to which the Administrator and such other persons may be subject by reason of any act done or omitted to be done in good faith with respect to the administration of the Plan and the Trust, including all expenses reasonably incurred in their defense in the event that the Employers failed to provide such defense after having been requested in writing to do so.

**14.14 Automated Systems**

The Administrator, in its discretion, may authorize Participants to make various requests for information, elections and other transactions under the Plan through the use of one or more of the following methods:  (a) written communications, (b) telephonic, automated voice response system, (c) computer network, or (d) any other method designated by the Administrator.

## SECTION 15

### Restrictions as to Reversion of Trust Assets to the Employers

The Employers shall have no right, title or interest in the assets of the Trust, except as may be provided in a pledge agreement entered into between an Employer and the Trustee in connection with an Acquisition Loan (a "*Pledge Agreement*").  No part of the assets of the Trust at any time will revert or will be repaid to the Employers, directly or indirectly, except as follows:

(a)     If the Internal Revenue Service initially determines that the Plan, as applied to an Employer, does not meet the requirements of a qualified plan under Section 401(a) of the Code, the assets of the Trust attributable to contributions made by the Employer under the Plan shall be returned to the Employer within one year of the date of denial of qualification of the Plan as applied to the Employer.

(b)     If a contribution or a portion of a contribution is made by an Employer as a result of a mistake of fact, such contribution or portion of a contribution shall not be considered to have been contributed to the Trust by the Employer and, after having been reduced by any losses of the Trust allocable thereto, shall be returned to the Employer within one year of the date the amount is paid to the Trust.

(c)     If a contribution made by an Employer is conditioned upon the deductibility of such contribution as an expense for Federal income tax purposes, to the extent the deduction for the contribution made by the Employer is disallowed, such contribution, or portion of such contribution, after having been reduced by any losses of the Trust allocable thereto, shall be returned to the Employer within one year of the date of disallowance of the deduction.

(d)     If there is a default on an Acquisition Loan, an Employer may exercise its rights under the Pledge Agreement with respect to the shares of Company Stock subject to the Pledge Agreement (including, but not limited to, the sale of pledged shares, the transfer of pledged shares to the Employer, and the registration of pledged shares in the Employer's name).

Contributions may be returned to an Employer pursuant to paragraph (a) above only if they are conditioned upon initial qualification of the Plan as applied to that Employer and an application for determination was made by the time prescribed by law for filing the Employer's Federal income tax return for the taxable year in which the Plan was adopted (or such later date as the Secretary of the Treasury may prescribe).  In no event may the return of a contribution pursuant to paragraph (b) or (c) above cause any Participant's Account balances to be less than the amount of such balances had the contribution not been made under the Plan.

56

# SECTION 16

## Amendment and Termination

### 16.1    Amendment

While the Company expects and intends to continue the Plan, the Company reserves the right to amend the Plan from time to time by action of the Board of Directors. Notwithstanding the foregoing:

(a)    An amendment may not change the duties and liabilities of the Administrator or the Trustee without the consent of the Administrator or the Trustee, whichever is applicable;

(b)    An amendment shall not reduce the value of a Participant's nonforfeitable benefits accrued prior to the later of the adoption or the Effective Date of the amendment; and

(c)    Except as provided in Section 15, under no condition shall any amendment result in the return or repayment to the Employers of any part of the Trust or the income therefrom or result in the distribution of the Trust for the benefit of anyone other than employees and former employees of the Employers and any other persons entitled to benefits under the Plan.

The Administrator shall notify the Trustee of any amendment of the Plan within a reasonable period of time.

### 16.2    Termination

The Plan will terminate as to all Employers on any date specified by the Company. The Plan will terminate as to an individual Employer on the date it is terminated by that Employer if thirty days' advance written notice of the termination is given to the Administrator, the Trustee and the other Employers.

### 16.3    Nonforfeitability and Distribution on Termination

On termination or partial termination of the Plan, or on a complete discontinuance of contributions, the rights of all affected Participants to benefits accrued to the date of such termination, after all adjustments then required have been made, shall be nonforfeitable. The Administrator shall specify the date of such termination or partial termination as a Special Accounting Date. All appropriate provisions of the Plan will continue to apply until the account balances of all such Participants have been distributed under the Plan.

**16.4   Plan Merger, Consolidation, Etc.**

In the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, each Participant's benefits (if the Plan terminated immediately after such merger, consolidation or transfer) shall be equal to or greater than the benefits the Participant would have been entitled to receive if the Plan had terminated immediately before the merger, consolidation or transfer.

# SECTION 17

## Administration

### 17.1   The Administrator

The Plan is administered by an Administrator appointed by the Company, which shall consist of one or more individuals (who may but need not be employees of the Employers) to conduct Plan administrative functions (the *"Administrator"*).

### 17.2   The Administrator's General Powers, Rights, and Duties

The Administrator shall have all the powers necessary and appropriate to discharge its duties under the Plan, which powers shall be exercised in the sole and absolute discretion of the Administrator, including, but not limited to, the following:

(a)   To construe and interpret the provisions of the Plan and to make factual determinations thereunder, including the power to determine the rights or eligibility under the Plan of employees, Participants, or any other persons, and the amounts of their benefits (if any) under the Plan, and to remedy ambiguities, inconsistencies or omissions, and such determinations by the Administrator shall be binding on all parties.

(b)   To adopt such rules of procedure and regulations as in its opinion may be necessary for the proper and efficient administration of the Plan and as are consistent with the Plan and Trust agreement.

(c)   To enforce the Plan in accordance with the terms of the Plan and the Trust and in accordance with the rules and regulations the Administrator has adopted.

(d)   To direct the Trustee as respects payments or distributions from the Trust in accordance with the provisions of the Plan.

(e)   To furnish the Employers with such information as may be required by them for tax or other purposes in connection with the Plan.

(f)   To employ agents, attorneys, accountants, actuaries or other persons (who also may be employed by the Employers) and to allocate or delegate to them such powers, rights and duties as the Administrator may consider necessary or advisable to properly carry out administration of the Plan, provided that such allocation or delegation and the acceptance thereof by such agents, attorneys, accountants, actuaries or other persons, shall be in writing.

(g)   To appoint an investment manager as defined in section 3(38) of ERISA to manage (with power to acquire and dispose of) the assets of the Plan, which investment

manager may or may not be a subsidiary of the Company, and to delegate to any such investment manager all of the powers, authorities and discretions granted to the Administrator hereunder or under the Trust agreement (including the power to delegate and the power, with prior notice to the Administrator, to appoint an investment manager), and to remove any investment manager; provided, however, that the power and authority to manage, acquire, or dispose of any asset of the Plan shall not be delegated except to an investment manager, and provided further that the acceptance by any investment manager of such appointment and delegation shall be in writing, and the Administrator shall give notice to the Trustee, in writing, of any appointment of, delegation to or removal of an investment manager.

     (h)   <u>Special Exercise of Trustee Discretion</u>:  To authorize the Trustee to act without the direction of the Administrator with regard to any matter concerning the purchase, sale, or voting of Company Stock, including the financing and other matters incidental to such purchase or sale, upon the written consent of the Trustee to accept such responsibility, in which case the Administrator shall have no authority or responsibility whatsoever with regard to the matters so delegated to the Trustee.

**17.3     Interested Administrator Member**

     If a member of the Administrator is also a Participant in the Plan, the Administrator member may not decide or determine any matter or question concerning distributions of any kind to be made to the Administrator member or the nature or mode of settlement of the Administrator member's benefits, unless such decision or determination could be made by the Administrator member under the Plan if the Administrator member were not serving on the Administrator.

**17.4     Administrator Expenses**

     All costs, charges and expenses reasonably incurred by the Administrator will be paid by the Company to the extent not paid from the assets of the Trust.  No compensation will be paid to a member of the Administrator as such.

**17.5     Uniform Rules**

     The Administrator shall administer the Plan on a reasonable and nondiscriminatory basis and shall apply uniform rules to all persons similarly situated.

**17.6     Information Required by the Administrator**

     Each person entitled to benefits under the Plan shall furnish the Administrator with such documents, evidence, data or information as the Administrator

considers necessary or desirable for the purpose of administering the Plan. The Employers shall furnish the Administrator with such data and information as the Administrator may deem necessary or desirable in order to administer the Plan. The records of the Employers as to an employee's or a Participant's period of employment, Hour of Service, termination of employment and the reason therefore, leave of absence, reemployment and Compensation will be conclusive on all persons unless determined to the Administrator's satisfaction to be incorrect.

**17.7    Review of Benefit Determinations**

The Administrator will provide notice in writing to any Participant or Beneficiary whose claim for benefits under the Plan is denied, and the Administrator shall afford such Participant or Beneficiary a full and fair review of its decision if so requested.

**17.8    Administrator's Decision Final**

Subject to applicable law, any interpretation of the provisions of the Plan and any decisions on any matter within the discretion of the Administrator made by the Administrator in good faith shall be binding on all persons. A misstatement or other mistake of fact shall be corrected when it becomes known, and the Administrator shall make such adjustment on account thereof as the Administrator considers equitable and practicable.

**17.9    Claims Procedure**

The following rules will apply relating to Participant or Beneficiary.

(a)    **Rights**. If a Participant or beneficiary has any grievance, complaint or claim concerning any aspect of the operation or administration of the Plan or trust, including but not limited to claims for benefits and complaints concerning the investment of Plan assets (collectively referred to herein as "claim" or "claims"), the Participant or beneficiary shall submit the claim in accordance with the procedures set forth in this item. All such claims must be submitted within the "applicable limitations period." The "applicable limitations period" shall be two years, beginning on (i) in the case of any lump sum payment, the date on which the payment was made, (ii) in the case of a periodic payment, the date on which action complained of occurred. Additionally, upon denial of an appeal pursuant to subsection (c) hereof, a Participant or beneficiary shall have 90 days within which to bring suit against the Plan for any claim related to such denied appeal; any such suit initiated after such 90-day period shall be precluded.

(b) **Procedure**. Claims for benefits under the Plan may be filed with the Plan administrator on forms supplied by the Plan administrator in accordance with subsection (b)(1) or (b)(2) herein, as applicable.

(i) Generally, except as provided in subsection (b)(2) hereof, the Plan administrator shall furnish to the claimant written notice of the disposition of a claim within 90 days after the application therefor is filed; provided, if special circumstances require an extension of time for processing the claim, the Plan administrator shall furnish written notice of the extension to the claimant prior to the end of the initial 90-day period, and such extension shall not exceed one additional, consecutive 90-day period. In the event the claim is denied, the notice of the disposition of the claim shall provide the specific reasons for the denial, cites of the pertinent provisions of the Plan, an explanation as to how the claimant can perfect the claim and/or submit the claim for review (where appropriate), and a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse determination on review.

(ii) Claims Based on an Independent Determination of Disability. With respect to a claim for benefits under the Plan based on disability (as defined in the Plan) (other than (i) approval for payment of benefits, directly or indirectly, under any long-term disability plan maintained by a participating company, or (ii) eligibility for Social Security disability benefits), the Plan administrator shall furnish to the claimant written notice of the disposition of a claim within 45 days after the application therefor is filed; provided, if matters beyond the control of the Plan administrator require an extension of time for processing the claim, the Plan administrator shall furnish written notice of the extension to the claimant prior to the end of the initial 45-day period, and such extension shall not exceed one additional, consecutive 30-day period; and, provided further, if matters beyond the control of the Plan administrator require an additional extension of time for processing the claim, the Plan administrator shall furnish written notice of the second extension to the claimant prior to the end of the initial 30-day extension period, and such extension shall not exceed an additional, consecutive 30-day period. Notice of any extension under this subsection (b)(2) shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a

decision on the claim, and the additional information needed to resolve those issues.  In the event the claim is denied, the notice of the disposition of the claim shall provide the specific reasons for the denial, cites of the pertinent provisions of the Plan, an explanation as to how the claimant can perfect the claim and/or submit the claim for review (where appropriate), and a statement of the claimant's right to bring a civil action under ERISA Section 502(a) following an adverse determination on review.

(c)   **Review Procedure**.  Any Participant or beneficiary who has been denied a benefit, or his duly authorized representative, shall be entitled, upon request to the Plan administrator, to appeal the denial of his claim in accordance with subsection (c)(i) or (c)(ii) hereof, as applicable.

    (i)   Generally.  Except as provided in subsection (c)(ii) hereof, the claimant or his duly authorized representative may review pertinent documents related to the Plan and in the Plan administrator's possession in order to prepare the appeal. The form containing the request for review, together with a written statement of the claimant's position, must be filed with the Plan administrator no later than 60 days after receipt of the written notification of denial of a claim provided for in subsection (b) hereof.  The Plan administrator's decision shall be made within 60 days following the filing of the request for review and shall be communicated in writing to the claimant; provided, if special circumstances require an extension of time for processing the appeal, the Plan administrator shall furnish written notice to the claimant prior to the end of the initial 60-day period, and such an extension shall not exceed one additional 60-day period.  If unfavorable, the notice of decision shall explain the reason or reasons for denial, indicate the provisions of the Plan or other documents used to arrive at the decision, and state the claimant's right to bring a civil action under ERISA Section 502(a).

    (ii)   Claims Based on an Independent Determination of Disability. With respect to an appeal of a denial of benefits under the Plan based on disability (as defined in the Plan) (other than (i) approval for payment of benefits, directly or indirectly, under any long-term disability plan maintained by a participating company, or (ii) eligibility for Social Security

disability benefits), the claimant or his duly authorized representative may review pertinent documents related to the Plan and in the Plan administrator's possession in order to prepare the appeal. The form containing the request for review, together with a written statement of the claimant's position, must be filed with the Plan administrator no later than 180 days after receipt of the written notification of denial of a claim provided for in subsection (b) hereof. The Plan administrator's decision shall be made within 45 days following the filing of the request for review and shall be communicated in writing to the claimant; provided, if special circumstances require an extension of time for processing the appeal, the Plan administrator shall furnish written notice to the claimant prior to the end of the initial 45-day period, and such extension shall not exceed one additional 45-day period. The Plan administrator's review shall not afford deference to the initial adverse benefit determination and shall be conducted by an individual who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual. In deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, the Plan administrator shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment and who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual. If unfavorable, the notice of decision shall explain the reason or reasons for denial, indicate the provisions of the Pan or other documents used to arrive at the decision, state the claimant's right to bring a civil action under ERISA Section 502(a), and identify all medical or vocational experts whose advice was obtained by the Plan administrator in connection with a claimant's adverse benefit determination.

(d)     **Satisfaction of Claims.**  Any payment to a Participant or beneficiary, or to his legal representative or heirs at law, all in accordance with the provisions of the Plan, shall to the extent thereof be in full satisfaction of all claims hereunder against the trustee, the Plan administrator, and the participating companies, any of whom may require such Participant, beneficiary, legal representative or heirs at law, as a condition to such payment, to execute a receipt and release therefore in such form as shall be

determined by the Trustee, the Plan administrator or the participating companies, as the case may be. If receipt and release shall be required but execution by such Participant, beneficiary, legal representative or heirs at law shall not be accomplished so that the terms of the Plan dealing with the timing of distributions may be fulfilled, such benefits may be distributed or paid into any appropriate court or to such other place as such court shall direct, for disposition in accordance with the order of such court, and such distribution shall be deemed to comply with the distribution requirements of the Plan.

# SECTION 18

## Special Rules Applicable When Plan is Top-Heavy

### 18.1    Purpose and Effect

The purpose of this Section 18 is to comply with the requirements of Section 416 of the Code and is effective January 1, 2002.  The provisions of this Section 18 are effective for each Plan Year beginning on or after the Effective Date in which the Plan is a "*Top-Heavy Plan*" within the meaning of Section 416(g) of the Code.

### 18.2    Top-Heavy Plan

In general, the Plan will be a Top-Heavy Plan for any Plan Year if, as of the "*Determination Date*" (that is, the last day of the preceding Plan Year or in the case of the first Plan Year, the last day of such Plan Year), the sum of the amounts in paragraphs (a), (b) and (c) below for Key Employees (as defined generally below and in Section 416(i)(1) of the Code) exceeds sixty percent of the sum of such amounts for all employees who are covered by this Plan or by a defined contribution plan or defined benefit plan that is aggregated with this Plan in accordance with Section 18.4:

(a)    The aggregate account balances of Participants under this Plan.

(b)    The aggregate account balances of Participants under any other defined contribution plan included under Section 18.4.

(c)    The present value of the cumulative accrued benefits of Participants calculated under any defined benefit plan included in Section 18.4.

(d)    This paragraph (d) shall apply for purposes of determining the present values of accrued benefits and the amounts of account balances of employees under this Section 18.2 as of the determination date.

(i)    Distributions during year ending on the determination date.  The present values of accrued benefits and the amounts of account balances of an employee as of the determination date shall be increased by the distributions made with respect to the employee under the Plan and any plan aggregated with the Plan under Code Section 416(g)(2) during the 1-year period ending on the determination date.  The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Code

66

Section 416(g)(2)(A)(i).  In the case of a distribution made for a reason other than severance from employment, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

(ii)    Employees not performing services during year ending on the determination date.  The accrued benefits and accounts of any individual who has not performed services for the Employer during the 1-year period ending on the determination date shall not be taken into account.

**18.3    Key Employee**

Determination of Key Employees.  Key employee means any employee or former employee (including any deceased employee) who at any time during the Plan Year that includes the determination date was an officer of the employer having annual compensation greater than $130,000 (as adjusted under Code Section 416(i)(1) for Plan Years beginning after December 31, 2002), a 5-percent owner of the employer or a 1-percent owner of the employer having annual compensation of more than $150,000.  For this purpose, annual compensation means compensation within the meaning of Code Section 415(c)(3).  The determination of who is a key employee will be made in accordance with Code Section 416(i)(1) and the applicable regulations and other guidance of general applicability issued thereunder.

**18.4    Aggregated Plans**

Each other defined contribution plan and defined benefit plan maintained by an Employer that covers a Key Employee as a Participant or that is maintained by an Employer in order for a plan covering a Key Employee to satisfy Section 401(a)(4) or 410 of the Code shall be aggregated with this Plan in determining whether this Plan is top-heavy.  In addition, any other defined contribution or defined benefit plan of an Employer may be included if all such plans that are included, when aggregated, will not discriminate in favor of officers, shareholders or Highly Compensated Employees and will satisfy all of the applicable requirements of Sections 401(a)(4) and 410 of the Code.  For purposes of determining whether the plans of an Employer are Top-Heavy for a particular Plan Year, the required aggregation group includes each plan of the Employer in which a key Employee participates in the Plan Year containing the determination date, or any of the four preceding Plan Years, regardless of whether or not the plan has terminated.

## 18.5   Minimum Vesting

For any Plan Year in which the Plan is a Top-Heavy Plan, a Participant's vested percentage in his Stock Account shall not be less than the percentage determined under the following table:

| Years of Service | Vested Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 or more | 100% |

If the foregoing provisions of this Section 18.5 become effective, and the Plan subsequently ceases to be a Top-Heavy Plan, no Participant shall have his vested percentage reduced, and each Participant who has then completed three or more Years of Service may elect to continue to have the vested percentage of his Employer Contribution Account determined under the provisions of this Section.

## 18.6   Minimum Employer Contribution

Subject to the following provisions of this Section and Section 18.7, for any Plan Year in which the Plan is a Top-Heavy Plan, the Employer contribution credited to each Participant who is not a Key Employee shall not be less than 3 percent of such Participant's total compensation from the Employers for that year.  In no event, however, shall the total Employer contribution credited in any year to a Participant who is not a Key Employee (expressed as a percentage of such Participant's total compensation from the Employer) exceed the maximum total Employer contribution credited in that year to a Key Employee (expressed as a percentage of such Key Employee's total compensation from an Employer).  Contributions made by an Employer under the Plan pursuant to Participants' income deferral authorizations shall not be deemed Employer Contributions for purposes of this Section.  The amount of minimum Employer contribution otherwise required to be allocated to any Participant for any Plan Year under this Section shall be reduced by the amount of Employer Contributions allocated to him for a Plan Year ending with or within that Plan Year under any other tax-qualified defined contribution plan maintained by an Employer.

**18.7    Coordination of Benefits**

For any Plan Year in which the Plan is top-heavy, in the case of a Participant who is a non-Key Employee and who is a Participant in a top-heavy tax-qualified defined benefit plan that is maintained by an Employer and that is subject to Section 416 of the Code, Section 18.6 shall not apply, and the minimum benefit to be provided to each such Participant in accordance with this Section 18 and Section 416(c) of the Code shall be the minimum annual retirement benefit to which he is entitled under such defined benefit plan in accordance with such Section 416(c), reduced by the amount of annual retirement benefit purchasable with his Plan Accounts (or portions thereof) attributable to Employer contributions under this Plan and any other tax-qualified defined contribution plan maintained by an Employer.

**18.8    Special Rules For Certain Plan Arrangements**

(a)    **Top-heavy requirements of safe harbor 401(k) plans.**  The top-heavy requirements of Code Section 416 and the Plan shall not apply in any Plan Year beginning after December 31, 2001, in which the Plan consists solely of a cash or deferred arrangement which meets the requirements of Code Section 401(k)(12) and matching contributions with respect to which the requirements of Code Section 401(m)(11) are met.

(b)    **Minimum Benefit Requirements of Code Section 416(c).**  Employer matching contributions shall be taken into account for purposes of satisfying the minimum contribution requirements of Code Section 416(c)(2) and the Plan.  The preceding sentence shall apply with respect to matching contributions under the Plan or, if the Plan provides that the minimum contribution requirement shall be met in another plan, such other plan (including a plan that consists solely of a cash or deferred arrangement which meets the requirements of Code Section 401(k)(12) and matching contributions with respect to which the requirements of Code Section 401(m) are met).  Employer matching contributions that are used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the actual contribution percentage test and other requirements of Code Section 401(m).

IN WITNESS WHEREOF, the foregoing plan is adopted by the Company, this 20th day of November, 2009.

_____

CFO
Title

AMENDMENTS TO THE

SOUTHERN PAN SERVICES COMPANY EMPLOYEE STOCK OWNERSHIP PLAN

The following amendments are made by Southern Pan Services Company (the "Company"), a corporation duly organized and existing under the laws of the State of Georgia, effective as of the dates indicated herein:

W I T N E S S E T H:

WHEREAS, pursuant to Section 16.1 of the Southern Pan Services Company Employee Stock Ownership Plan (the "Plan"), the Company retains the power to amend the Plan.

WHEREAS, the Company believes that it is desirable to modify the Plan to reflect certain amendments relating to changes in its Plan, and to include certain amendments required or permitted by the Internal Revenue Service;

NOW, THEREFORE, the Company hereby amends the Plan as follows:

FIRST:     Section 11.5 (DIRECT ROLLOVERS) of the Plan is amended in its entirety, effective January 1, 2010, as follows:

11.5    Direct Rollovers

Certain individuals who are to receive distributions under the Plan may elect that such distributions be paid in the form of a direct rollover (as described in Section 401(a)(31) of the Code and the regulations thereunder) to the Trustee or custodian of a plan eligible to accept direct rollovers, subject to the following:

(a)     Eligible Rollover Distribution. A distribution may be paid in a direct rollover under this Section only if the distribution constitutes an Eligible Rollover Distribution. An "Eligible Rollover Distribution" means distribution under the Plan to an Eligible Distributee other than:  (i) a distribution that is one of a series of substantially equal payments made annually or more frequently either over the life (or life expectancy) of the Participant or the joint lives (or life expectancies) of the Participant and his Beneficiary or over a specified period of ten years or more, (ii) a distribution required under Section 11.4(d) to meet the minimum distribution requirements of Section 401(a)(9) of the Code, or (iii) a distribution excluded from the definition of an Eligible Rollover Distribution under applicable Treasury Regulations. Notwithstanding the immediately preceding sentence, an Eligible Rollover Distribution includes only those amounts that would be includible in the gross income of the Eligible Distributee if such amounts were not rolled over to another plan as provided under Section 402(c) of the Code. For purposes of the direct rollover provisions of the Plan, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not

includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code Section 408(a) or to a qualified defined contribution plan described in Code Section 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible. Finally, for purposes of the direct rollover provisions of the Plan, any amount that is distributed on account of hardship shall not be an eligible rollover distribution and the distributee may not elect to have any portion of such a distribution paid directly to an eligible retirement plan.

(b)  Eligible Distributee. An "Eligible Distributee" is: (i) a Participant, (ii) a Participant's surviving Spouse who is entitled to receive payment of the Participant's Account balances after the Participant's death, or (iii) the Spouse or former spouse of a Participant who is an alternate payee under a qualified domestic relations order (as defined in Section 414(p) of the Code). In addition, effective January 1, 2010, an Eligible Distributee shall include any non-spouse beneficiary of a deceased Employee or former Employee who is a designated beneficiary of such person.

(c)  Eligible Retirement Plan. A direct rollover of an Eligible Rollover Distribution may be made to no more than one Eligible Retirement Plan. Except as otherwise provided below, an "Eligible Retirement Plan" is: (i) an individual retirement account described in Section 408(a) of the Code, (ii) an individual retirement annuity described in Section 408(b) of the Code (other than an endowment contract), (iii) an annuity plan described in Section 403(a) of the Code, or (iv) a plan qualified under Section 401(a) of the Code that by its terms permits the acceptance of rollover contributions. With respect to the surviving Spouse of a deceased Participant who is entitled to receive a distribution of the Participant's Accounts, an "Eligible Retirement Plan" shall mean only an individual retirement account described in Section 408(a) of the Code or an individual retirement annuity described in Section 408(b) of the Code (other than an endowment contract). For purposes of the direct rollover provisions of the Plan, an eligible retirement plan shall also mean an annuity contract described in Code Section 403(h) and an eligible plan under Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p). Also, notwithstanding the above, effective January 1, 2010, with respect to an Eligible Distributee who is a non-spouse of a deceased Employee or former Employee, an Eligible Retirement Plan shall include only an individual retirement plan described in section 408(a) of the Code or an individual retirement annuity under Section 408(b) of the Code where Plan funds are transferred in a trustee-to-trustee transfer to an "inherited IRA" consistent with Internal Revenue Service pronouncements, including IRS Notice 2009-68.

(d)  Minimum Amounts. An Eligible Distributee may elect a direct rollover of all or a portion of an Eligible Rollover Distribution only if the total amount of the Eligible Rollover Distributions expected to be received by the Eligible Distributee

during the Plan Year is $200 or more (or such lesser amount as the Administrator may establish). An Eligible Distributee may elect payment of a portion of an Eligible Rollover Distribution as a direct rollover and may receive directly the remainder of such distribution, provided that the amount paid by direct rollover is at least $500 (or such lesser amount as the Administrator may establish).

(e)     Elections. An Eligible Distributee's election of a direct rollover pursuant to this Section must be in writing on a form designated by the Administrator and must be filed with the Administrator at such time and in such manner as the Administrator shall determine. The Administrator shall establish such rules and procedures as it deems necessary to provide for distributions by means of direct rollover."

SECOND:   Section 2.4 (MILITARY SERVICE) of the Plan is amended in its entirety, effective January 1, 2007, as follows:

"2.4    Military Service

Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u).

In addition, effective January 1, 2007, in the case of a Participant who dies while performing qualified military service (as defined in section 414(u) of the Code) on or after January 1, 2007, the survivors of the Participant are entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) provided under the Plan had the Participant resumed and then terminated employment on account of death, all consistent with the requirements of the Heroes Earnings Assistance and Relief Tax (HEART) Act of 2008. Therefore, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with the mandatory requirements of Code Section 414(u) and Section 401(a)(37)."

THIRD:    Section 3.4 (COMPENSATION) of the Plan is amended in its entirety, effective January 1, 2009, as follows:

"3.4    Compensation

Except as otherwise provided below, a Participant's "Compensation" for a Plan Year means the wages paid to a Participant within the meaning of section 3401(a) of the Code and all other payments of compensation to the Participant by an Employer for which the Employer is required to furnish the Participant a written statement, as described in Treas. Reg. § 1.415-2(d)(11)(i), but including for such Plan Year all of a Participant's salary reductions made pursuant to an arrangement maintained by an Employer under Section 125, 132(f)(4), 401(k) or 457 of the Code during the Plan Year. For Plan Years beginning on or after January 1, 2003, Compensation paid to a Leased Employee shall include amounts determined as if the leasing company were an Employer.

For a Participant's initial year of participation, Compensation shall be recognized for the entire Plan Year.

In no event shall the amount of a Participant's Compensation taken into account for purposes of the Plan for any Plan Year exceed the dollar limitation in effect under Code Section 401(a)(17)(B) (as that limitation is adjusted from time to time by the Secretary of the Treasury pursuant to Code Section 401(a)(17) and which is $200,000 for the 2002 Plan Year). If this period consists of fewer than 12 months, the annual compensation limit shall be an amount equal to the otherwise applicable annual compensation limit multiplied by a fraction, the numerator of which is the number of months in the short determination period, and the denominator of which is 12. The cost-of-living adjustment in effect for a calendar year applies to annual compensation for the determination period that begins with or within such calendar year.

For purposes of the definition of compensation, amounts under Code Section 125 include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that he or she has other health coverage. An amount will be treated as an amount under Code Section 125 only if the employer does not request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

Notwithstanding anything to the contrary in Section 3.4 above, effective January 1, 2009, compensation for this purpose (and for any other purpose relating to the limitations under Section 415(b)of the Code), shall also include differential wage payments (as defined in section 3401 of the Code) made under the Heroes Earnings Assistance and Relief Tax (HEART) Act of 2008 and Section 3401(h) of the Code. For this purpose, differential wage payments is defined as any payment which: (A) is made by an employer to an individual with respect to any period during which the individual is performing service in the uniformed services (as defined in the Uniformed Services Employment and Reemployment Rights Act of 1994) while on active duty for a period of more than 30 days, and (B) represents all or a portion of the wages the individual would have received from the employer if the individual were performing service for the employer."

IN WITNESS WHEREOF, the Company has caused this amendment to be executed this 30th day of December, 2010, in its name and under its corporate seal, by and through its duly authorized officers.

SOUTHERN PAN SERVICES COMPANY

By: _____

Its: _____